## A98A0078. JONES v. KRYSTAL COMPANY.

(498 SE2d 565)

ELDRIDGE, Judge.

On May 18, 1994, Marvin Jones, plaintiff-appellant, and his boss entered a Krystal restaurant at 12:25 a.m., ordered, were served, and sat at a table. When they were ready to leave after about 20 minutes, they took their trash to a trash receptacle near the front counter.

As plaintiff approached the trash receptacle, his feet shot out from under him, and he fell on his back. The fall occurred at 12:45 a.m., when the restaurant was not busy. Immediately prior to the fall, there were several Krystal employees at the front counter near the trash receptacle behind the counter. During the 20 minutes that the plaintiff had been in the Krystal, several other customers had been served by employees, which required employees to come to the counter near the trash receptacle where the spill was observable by them.

Plaintiff slipped on cola and melting ice on the floor, which he did not see in front of the counter. Plaintiff did not know how long it had been there or where the cola and ice came from. He was not looking at the floor at the time of the fall and was not distracted; the lighting was normal. However, the plaintiff testified that, had he looked at the floor, he would not be able to see the cola on the floor, because the cola blended in with brown floor color. The floor was made of tiles of brown, tan, and white, which hid the substance on the floor from normal observation. During the 20 minutes that the plaintiff was in the Krystal, he did not see any employee either inspect or clean the floor. The color of the floor and the placement of the trash receptacle opposite the counter where customers came and went raise issues as to the need for more frequent inspections.

Plaintiff filed suit against The Krystal Company, defendant-appellee ("Krystal"), in the State Court of Fulton County. Krystal answered and later filed a motion for summary judgment based only on plaintiff's deposition and did not file any affidavits as to the maintenance schedule followed on that or any other day. Summary judgment was granted. Plaintiff timely filed his notice of appeal.

The plaintiff's enumerations of error all assert that the trial court erred in granting summary judgment for different reasons. We agree, because the defendant failed to pierce the complaint and to show that no evidence could be produced by the plaintiff to create a jury issue on the essential issue of knowledge of the danger by the defendant. The evidence raised the issue of constructive notice for jury determination.

(a) This is a classic slip and fall case in which the defendant relies upon plaintiff's deposition only and in which the plaintiff in response to the motion for summary judgment under OCGA § 9-11-

56 (e) produces evidence that the floor was of such construction that the brown, tan, and white floor tiles made the spill unnoticeable by customers but increased the duty to inspect upon the employees. There are no depositions of the Krystal employees to show the extent of their knowledge of the spill; plaintiff failed to file the interrogatory responses of the defendant. Thus, the case turns on constructive knowledge only. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327) (1980); see also *Barentine v. Kroger Co.*, 264 Ga. 224 (443 SE2d 485) (1994).

(b) There was no evidence in the record regarding how or when maintenance was normally conducted. Therefore, constructive knowledge arising from the duty to inspect was not negated by evidence of a policy of regular inspection and testimony that no foreign substance had been found at the last inspection. *FoodMax v. Terry*, 210 Ga. App. 511, 512 (1) (436 SE2d 725) (1993); *Mallory v. Piggly Wiggly Southern*, 200 Ga. App. 428, 430 (1) (408 SE2d 443) (1991); *Mazur v. Food Giant*, 183 Ga. App. 453, 454 (1) (359 SE2d 178) (1987).[1] However, the nature of the floor, so that it would hide spills, the placement of the trash receptacle opposite the counter, and the size of the serving area that was frequently filled with customers entering and leaving, gave rise to a jury question on the part of the owner/occupier as to the duty to conduct more frequent inspections and to anticipate spills, leaks, or dropped food around the trash receptacle, because such conditions made the premises unusually dangerous. *Winn-Dixie Stores v. Hardy*, 138 Ga. App. 342, 344 (226 SE2d 142) (1976); *Colonial Stores v. Turner*, 117 Ga. App. 331, 334 (160 SE2d 672) (1968); *Angel v. Varsity, Inc.*, 113 Ga. App. 507, 508-509 (148 SE2d 451) (1966).

The record does show from plaintiff's evidence that, during the 20 minutes that plaintiff was in the Krystal prior to his injury, he did not see any inspection or maintenance performed. "Liability based on constructive knowledge may *also* be established by showing that the owner failed to exercise reasonable care in inspecting the premises, but recovery under that approach requires proof of the length of time the dangerous condition was allowed to exist." (Citations and punctuation omitted; emphasis in original.) *Thompson v. Regency Mall Assoc.*, 209 Ga. App. 1, 3 (1) (432 SE2d 230) (1993); accord *Cook v. Home Depot*, 214 Ga. App. 133, 134 (1) (447 SE2d 35) (1994). Plaintiff's evidence raised a factual question as to the length of time that the spill had remained on the floor, i.e., 20 minutes at a minimum or

---

[1] A policy of inspection may be inadequate under the facts and circumstances of the case to guard against a known or foreseeable danger so that the existence of a policy does not automatically bar liability. Further, a reasonable and adequate policy of inspection may not have been, in fact, followed on that occasion.

the time within which the ice could partially melt at normal room temperature.

(c) Plaintiff and his witness established that the floor camouflaged the ice and cola, so that it could not be seen by them. This insulates the plaintiff from the consequences of his failure to exercise ordinary care for his own safety in not looking at the floor. Because plaintiff may not have been able to see the spill and to avoid it, he was without knowledge or the ability to discover the danger, which satisfies the second prong of the *Alterman* standard. See *Alterman Foods v. Ligon,* supra at 623; see also *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997); *Sarantis v. Kroger Co.*, 201 Ga. App. 552 (411 SE2d 758) (1991).

Constructive knowledge of the owner/occupier of the hazard arises by inference when employees were in the immediate vicinity and had the opportunity to discover and remove the hazard. *Drake v. Kroger Co.*, 213 Ga. App. 72 (443 SE2d 698) (1994); *Mallory v. Piggly-Wiggly Southern Stores,* 200 Ga. App. 428 (408 SE2d 443) (1991); *Queen v. Kroger Co.,* 191 Ga. App. 249 (381 SE2d 413) (1989); *Winn-Dixie Stores v. Hardy,* 138 Ga. App. 342, 345 (226 SE2d 142) (1976); *Sharpton v. Great A & P Tea Co.,* 112 Ga. App. 283, 285-286 (145 SE2d 101) (1965); *S. H. Kress & Co. v. Flanigan,* 103 Ga. App. 301, 303 (1) (119 SE2d 32) (1976). Here, the evidence gives rise to the inference of constructive knowledge by the presence of the employees at the counter to serve the other customers during the 20 minutes that the plaintiff was there.

(d) However, constructive knowledge can also arise from the failure to exercise reasonable care in inspecting the premises to keep them safe. *Smith v. Winn-Dixie Atlanta,* 203 Ga. App. 565 (417 SE2d 202) (1992); *Queen v. Kroger Co.,* supra at 249-250.

"As to [the duty to keep the premises safe], the owner has a duty to exercise ordinary care in keeping the premises safe. (Cits.) This includes a duty to inspect the premises to discover possible dangerous conditions of which he does not know and to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement and use of the premises. (Cits.) *Barksdale v. Nuwar,* 203 Ga. App. 184, 185 (416 SE2d 546) (1992)." (Punctuation omitted.) *Strickland v. Howard,* 214 Ga. App. 307, 308 (447 SE2d 637) (1994).

The facts and circumstances of this case give rise to a jury question regarding the reasonableness of the frequency of the inspections by the store owner as compared to food stores or even ordinary restaurants, i.e., non-fast food. This arises from the greater danger under the circumstances of this case. The reasons for the greater need for inspections in the exercise of ordinary care under the circumstances arise from the unique nature of fast food restaurants in

general, which is evident in this case. First, the time between inspections in this case was greater than ten minutes; second, the floor design camouflaged the presence of a foreign substance on the floor by its three-color floor tile pattern with grout separations; third, the dispensing of beverages and food to people in a hurry had increased the risk of spills; fourth, the trash receptacle was located in front of the counter, making it more likely that spills of beverages and food, or leaks in the trash receptacle, would allow beverages and ice to get on the floor and be seen by employees at the counter; fifth, the service counter generally would be continuously occupied by employees, who should be aware of any beverage or food spilled; sixth, the site of the fall was the area of greatest traffic in people coming or going; and seventh the area was small and as in the case of most fast food restaurants crowded during peak times in this small area, which would prevent customers being able to see the floor and cause distractions by the employees asking for orders. See *Robinson v. Kroger Co.*, supra; *Angel v. Varsity, Inc.*, supra at 508-509.

In this case, 20 minutes elapsed during which neither inspection nor cleaning occurred. *Strickland v. Howard,* supra at 308; *Rush v. Food Giant,* 183 Ga. App. 388, 392 (1) (358 SE2d 919) (1987); *Mazur v. Food Giant,* supra. The melting ice, at room temperature, showed that the spill had not been on the floor for a sufficient time for the ice to totally melt, but had been on the floor a sufficient time to partially melt. In the absence of direct testimony as to the last inspection, as in the cases of the other substances, i.e., butter or ice cream, the incomplete melting of the ice raised a jury issue as to the length the melting ice had been present. See *Brown v. Piggly Wiggly Southern,* 210 Ga. App. 459 (436 SE2d 513) (1993); *Mitchell v. Rainey,* 187 Ga. App. 510 (370 SE2d 673) (1988). Thus, a jury may find constructive knowledge in this case, because the foreign substance must be shown to have been on the floor a sufficiently known length of time to infer knowledge through routine inspection. See *Johnson v. Autozone,* 219 Ga. App. 390, 394 (465 SE2d 463) (1995); *Cook v. Home Depot,* 214 Ga. App. 133, 134 (447 SE2d 35) (1994); see also *Alterman Foods v. Ligon,* supra at 623; *Wiley v. Winn-Dixie Stores,* 204 Ga. App. 570 (420 SE2d 20) (1992).

(e) Since there is no evidence in the record that Krystal employees conducted any inspection at any time on the evening in question or that an inspection and maintenance policy existed, and since the melting ice and cola were detectable in a reasonable inspection (because plaintiff was able to discover the spill after he searched for it), then it follows that, for purposes of the motion for summary judgment and a determination of constructive knowledge, a reasonable inspection by Krystal employees would have revealed the spill. Therefore, constructive knowledge can be inferred. *Daniel v. John Q.*

*Carter Enterprises,* 218 Ga. App. 223 (460 SE2d 838) (1995); *Jackson v. Wal-Mart Stores,* 206 Ga. App. 165, 169 (424 SE2d 845) (1992); *Food Giant v. Cooke,* 186 Ga. App. 253, 255 (366 SE2d 781) (1988); *Winn-Dixie of Greenville v. Ramey,* 186 Ga. App. 257 (366 SE2d 785) (1988). "In the absence of evidence that [the Krystal employees] conducted [any] reasonable inspection of the premises that would have discovered the foreign substance that caused the slickness on the floor, [plaintiff] was not required to present evidence establishing the length of time that the substance had been allowed to remain on the floor." *Jackson v. Wal-Mart Stores,* supra at 169; see *Boss v. Food Giant,* 193 Ga. App. 434, 436 (388 SE2d 37) (1989); *Winn-Dixie of Greenville v. Ramey,* supra at 259; see also *Robinson v. Kroger Co.,* supra.

This case is distinguishable on both the law and facts from *Blake v. Kroger Co.,* 224 Ga. App. 140, 141-145 (2) (480 SE2d 199) (1996), which was expressly overruled by *Robinson v. Kroger Co.,* supra, because "Defendant Kroger contends its employees inspect and sweep its floors on a regular basis and are instructed to clean up any foreign substance they see on the floor." Id. at 141. As such, there was evidence of an inspection policy in *Blake;* in this case, there was no evidence of either a policy or inspection and there was "evidence that actual inspecting and cleaning would have discovered and removed the foreign substance," which was not present in *Blake.* Id. at 142. Further, importantly, *Robinson v. Kroger Co.,* supra at 747-748, held in regard to *Blake* quoting, " '[u]nder *Lau's Corp.,* the defendant proprietor has no burden whatsoever on summary judgment to produce evidence to negate the plaintiff's theory of recovery'; [cits.] Because the *Lau's Corp.* decision modified the practical application of the *Alterman Foods'* standard, we must modify *Alterman Foods* somewhat in order to regain balance in the allocation of the burden of proof. A slip-and-fall plaintiff need not necessarily produce evidence which disproves the plaintiff's negligence to withstand a motion for summary judgment — the burden of coming forward with such evidence arises only after it has been established or assumed the defendant had actual or constructive knowledge of the hazard, and the defendant presents evidence that the plaintiff's injuries were proximately caused either by the plaintiff's voluntary negligence, i.e., plaintiff's intentional and unreasonable exposure of self to a hazard of which plaintiff has knowledge, or by the plaintiff's casual negligence, i.e., the plaintiff's failure to exercise ordinary care for personal safety. In this way, the defendant has the evidentiary burden as to the issue of the plaintiff's negligence after it has been established or assumed for purposes of a motion for summary judgment that the defendant was negligent, i.e., that the defendant had actual or constructive knowledge of the existence of a hazard on its premises. . . .

By re-establishing the evidentiary burdens to where they were at the time *Alterman Foods* was decided, we lighten the load placed on plaintiffs by more recent judicial decisions, and place on defendants that which is normally required of a defendant — the establishment of a defense to liability."

(f) "On [defendant's] motion for summary judgment [cit.], even assuming [defendant] had knowledge of the peril, it was [plaintiff's] burden to come forward with specific evidence that [defendant's] knowledge of the peril was superior, for that is the true ground of the proprietor's liability." *Minor v. Super Discount Markets*, 211 Ga. App. 123, 124 (438 SE2d 384) (1993); accord *Cook v. Home Depot,* supra at 135.

While the plaintiff had the duty to come forward with evidence on summary judgment to create a material issue of fact on an essential issue under attack, i.e., knowledge of the danger by the defendant, on motion for summary judgment the plaintiff was entitled to all reasonable, favorable inferences drawn from the evidence. See *Lau's Corp. v. Haskins,* supra at 491; *Padgett v. M & M Super Market,* 195 Ga. App. 799, 800 (395 SE2d 245) (1990); see also *Robinson v. Kroger Co.,* supra.

The defendant cannot fail to produce evidence regarding its knowledge or lack of knowledge, without the risk that the presumption will arise that such evidence withheld was unfavorable. OCGA § 24-4-22 reads: "If a party has evidence in his power and within his reach by which he may repel a claim or charge against him but omits to produce it, or if he has more certain and satisfactory evidence in his power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against him is well founded; but this presumption may be rebutted." The legislative intent of OCGA § 24-4-22 was that a party should be penalized by the presumption for withholding evidence within their power to produce, and relying on evidence of an inferior nature. *Fields v. Yellow Cab Co.,* 80 Ga. App. 569 (56 SE2d 845) (1949). It is irrelevant which party has the burden to produce evidence, because the public policy favors producing evidence from which the factfinder can determine where the truth lies. *Shiver & Barnett v. Firemens Ins. Co.,* 60 Ga. App. 57 (2 SE2d 760) (1939). The presumption arising from suppression of evidence is one of fact, not of law. *Glynn Plymouth, Inc. v. Davis,* 120 Ga. App. 475 (170 SE2d 848), aff'd, 226 Ga. 221 (173 SE2d 691) (1970). The presumption arises, as in this case, only when the party has evidence within its control, i.e., employees on duty and details of the last inspection, and fails to produce the evidence to negate constructive knowledge. See *Dunaway v. Parker*, 215 Ga. App. 841, 850 (5) (453 SE2d 43) (1994); *Eddie Parker Interests v. Booth,* 160 Ga. App. 15 (285 SE2d 753) (1981); *Maloy v. Dixon,* 127 Ga. App.

151, 154-160 (2) (193 SE2d 19) (1972).

On motion for summary judgment, the defendant, as movant, must either present evidence that pierces plaintiff's complaint as to an essential element or "must demonstrate by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's case." *Lau's Corp. v. Haskins*, supra at 495; *Jackson v. Wal-Mart Stores,* supra at 168. "The burden was upon [Krystal] as movant for summary judgment to establish no genuine issue remained as to its lack of constructive knowledge under both these theories either by adducing evidence, *Food Giant [v. Cook,* supra], or by pointing out by reference to the record that there is an absence of evidence to support the case of [the plaintiff], the nonmoving party." *Jackson v. Wal-Mart Stores,* supra at 168.

In this case, the defendant presented no evidence as to any inspection schedule or as to what the last inspection revealed; no employee testified. Spilling a drink and ice in front of the counter serviced by Krystal employees should have been seen or heard by them and would therefore give rise to a duty to inspect immediately and to clean up the spill. The plaintiff was entitled to have the presumption arise in his favor on summary judgment that defendant had actual knowledge of the spill or should have the inference of constructive knowledge. See *Shipley v. Handicaps Mobility Systems,* 222 Ga. App. 101 (473 SE2d 533) (1996). Therefore, the presumption raised a question of fact for the jury as to defendant Krystal's constructive knowledge, and the trial court erred in granting summary judgment.

"In sum, we remind members of the judiciary that 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed." *Robinson v. Kroger Co.*, supra at 748. This case fails to satisfy such high standard for the grant of summary judgment.

*Judgment reversed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 11, 1998

*David L. Smith*, for appellant.

*Webb, Carlock, Copeland, Semler & Stair, Douglas A. Wilde, Matthew L. Hilt*, for appellee.