A02A0123. BARGE v. MELVIN CARMICHAEL ENTERPRISES, INC.
(556 SE2d 906)

ELDRIDGE, Judge.
On June 4, 1998, at approximately 11:40 a.m., Betty Rose Barge slipped and fell on some ham salad that had been spilled on the floor

of aisle seven of Zack's Discount Foods[1] when a customer apparently dropped a plastic ham salad container in the aisle on the way to the checkout counter; picked up the cracked container, leaving ham salad on the floor; returned the cracked container to the refrigerated foods section, burying it under other containers; picked up an unscathed container of ham salad; and checked out of the grocery store without informing anyone what had happened. Barge suffered injury from her fall and brought suit against Zack's. The trial court granted Zack's motion for summary judgment, finding that Barge failed to show how long the ham salad had been on the floor. The court determined that a plaintiff must put forth evidence as to how long a foreign substance has been on a defendant's floor before a defendant has any obligation to come forward with evidence of a reasonable inspection plan. For the reasons that follow, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[3]

The evidence is uncontested that ham salad left on the floor caused Barge's fall. In addition, the evidence in this case does not show that Zack's had actual knowledge of the ham salad on the floor. Instead, Barge contends that Zack's had constructive knowledge of the hazard. In that regard,

> [c]onstructive knowledge may be established by showing that an employee of the proprietor was in the immediate area of the hazardous condition and could have easily seen the substance or that a foreign substance remained on the floor for such a time that ordinary diligence by the proprietor should have effected its discovery.[4]

We have further held, contrary to the trial court's conclusions, that "in order to withstand a motion for summary judgment, a plaintiff need not show how long a substance has been on the floor unless the defendant has established that reasonable inspection procedures

---

[1] Appellee-defendant Melvin Carmichael Enterprises, Inc. does business as Zack's Discount Foods and hereinafter will be referred to as "Zack's."

[2] OCGA § 9-11-56 (c).

[3] *Delta Air Lines v. Clayton County Bd. of Tax Assessors*, 246 Ga. App. 225, 226 (539 SE2d 905) (2000).

[4] (Punctuation omitted.) *Straughter v. J. H. Harvey Co.*, 232 Ga. App. 29 (1) (500 SE2d 353) (1998).

were in place and followed at the time of the incident."[5] And this holding is grounded in common sense. Absent a showing that some type of reasonable inspection procedure is in place and actually being carried out, it does not matter how long a foreign substance has been on the floor, because the favorable inferences to which a plaintiff is entitled on summary judgment as nonmovant would permit the conclusion that the hazardous substance would not have been discovered timely anyway in order to remove it.

With these principles in mind, the evidence of record shows that not only did Zack's fail to have "reasonable" inspection procedures in place, Zack's had almost no inspection procedures in place at the time of the incident. The record shows that in 1998, at the time of Barge's fall, Zack's relied principally on Willie Clifford Lackey, Jr. to inspect the aisles of the store. By deposition, Lackey testified that his main duties at the store were to bag groceries and to bring in shopping carts from the parking lot. Lackey testified that prior to the store's opening at 7:00 a.m. on the incident date, he walked the aisles, shelving items that had been left out from the day before: "they asked me to check the aisles in the mornings when I come in." He testified that after the store opened, "I start doing my job inside bagging groceries." Lackey stated that he could not inspect the aisles on a regular basis because of his bagging duties: "Well, you can't — sometimes you can't do it in regular intervals, but I done it as quickly as I could because my job consists of bringing in buggies and bagging groceries and taking groceries out and whatever I had to do up there." Lackey testified that he had no idea when any inspection was done on the aisles on June 4, 1998. He also stated that he did not know who would have inspected the aisles if he did not, because inspecting the aisles was his job. Lackey testified that when he was too busy to check the aisles, he would try to get someone else to do it: "If I asked them to do something, if they had time, they would. And if they didn't I'd try to get somebody else to. But that's about it." And that is about it.

The owner of Zack's, Beneverly Carmichael, testified by deposition that Lackey was the one responsible for checking the aisles "on and off all day." In contradiction of Lackey's testimony, Carmichael testified that different employees were also assigned on a daily basis

---

[5] Id. at 30. See also *J. H. Harvey Co. v. Reddick*, 240 Ga. App. 466, 470 (522 SE2d 749) (1999); *Fussell v. Jimbo's Log Kitchen*, 227 Ga. App. 161, 165-166 (489 SE2d 71) (1997) (whole court); *Newell v. Great A & P Tea Co.*, 222 Ga. App. 884, 886-887 (476 SE2d 631) (1996); *Sheriff v. Hosp. Auth. of Houston County*, 221 Ga. App. 14, 15 (471 SE2d 3) (1996) (whole court); *Piggly Wiggly Southern v. Brown*, 219 Ga. App. 614, 616 (468 SE2d 387) (1995) (whole court); *Daniel v. John Q. Carter Enterprises*, 218 Ga. App. 223, 225 (460 SE2d 838) (1995) (whole court); *Burke v. Bi-Lo*, 212 Ga. App. 115, 117 (441 SE2d 429) (1994); *Jackson v. Wal-Mart Stores*, 206 Ga. App. 165, 169 (424 SE2d 845) (1992); *Winn-Dixie of Greenville v. Ramey*, 186 Ga. App. 257, 259 (366 SE2d 785) (1988).

to check the aisles: "I'm not real sure how often. It's done hourly, but, you know, I'm not — different ones do it. . . . They're assigned it daily, one a day has to do it, but . . . I don't know if they were just asked when you come in in the morning or not, but people did check it." Carmichael also testified that she had no idea when any inspection was done on June 4, 1998; who would have performed such inspection; or who would have assigned such inspections.

Deposition testimony was also taken from Jerry Williamson, who served as produce manager in 1998. However, he specifically stated that he could speak only to his own inspection procedures in the produce department and could not testify about store-wide inspections. Barge's fall did not take place in the produce department, although Zack's for the first time asserts by brief that it did. We find this assertion disingenuous. As a matter of fact, Williamson testified that the fall occurred 50 to 100 feet from the produce department. Williamson stated that he saw people around Barge, attending to her, "[s]o then I just turned and went back to whatever I was doing at the moment." Williamson testified that he did not determine what had happened to Barge because the fall did *not* occur in the produce department: "it's not part of my job description to if someone were to fall down at that time I was to go out there and inspect it, unless of course, it was in my own department."

The record further contains deposition testimony from the owner's son, Benjamin Carmichael, who took over as store manager after the incident date. He testified that Lackey was the only person assigned to check the aisles in the morning and "there was no set interval thereafter." He testified that since aisle seven where the fall took place was the shortest route to the break area, employees were "up and down" such aisle "every 15 to 20 minutes," and such employees were "supposed" to check for hazards, although the store manager was in charge of assigning such duties. Notably, the store manager at the time of the incident, Rusty Cochran, was removed as manager after Barge's fall and quit his employment at Zack's shortly thereafter; he did not provide deposition testimony. Further, employee turnover at Zack's is extremely high, and no employees testified as to any inspection of the aisles.[6]

> The length of time that a foreign substance must remain on the floor before a proprietor should have discovered it — and, by extension, what constitutes a reasonable frequency

---

[6] Zack's asserts by brief that "[t]he employees testified that these [hourly] inspections took place on June 4, 1998." Since the record is devoid of absolutely any testimony from "employees" about any inspections, let alone hourly inspections, taking place, we reject Zack's assertion.

of inspections — will vary with the circumstances of each case (the nature of the business, size of the store, the number of customers, the nature of the dangerous condition and the store's location).[7]

Under the evidence of record, we cannot say as a matter of law that Zack's inspection procedures in June 1998 were "reasonable." Instead, the evidence presents a jury question, and Zack's was not entitled to summary judgment on the issue of constructive knowledge.[8] The trial court's conclusion to the contrary was error.

*Judgment reversed. Smith, P. J., and Ellington, J., concur.*

DECIDED DECEMBER 3, 2001.

*Seacrest, Karesh, Tate & Bicknese, Gary L. Seacrest, Jeffrey P. Raasch*, for appellant.

*Hall, Booth, Smith & Slover, John E. Hall, Jr., Terrell W. Benton III*, for appellee.

---

[7] (Citation and punctuation omitted.) *J. H. Harvey Co. v. Reddick*, supra at 471 (1) (b).
[8] Id.