A10A2242. BENEFIELD v. TOMINICH.
(708 SE2d 563)

DILLARD, Judge.

In this premises-liability action, Margaret Benefield sued April Marie Tominich, doing business as Taylor's Gin Store ("TGS"), alleging that TGS breached a duty it owed her as an invitee when she tripped on a rubber mat outside of the entrance to the store and suffered injuries as a result. TGS filed a motion for summary judgment, which the trial court granted. Benefield now appeals, arguing that the trial court erred in finding that there existed no genuine issue of material fact as to whether TGS had superior knowledge of the hazard posed by the rubber mat. For the reasons set forth infra, we are constrained to reverse.

Viewed in the light most favorable to Benefield (i.e., the non-moving party),[1] the record shows that on August 1, 2007 around noon, Benefield went to TGS—which operates as a gasoline station and a convenience store—to pick up a few groceries. After parking and exiting her vehicle, Benefield stepped onto an orange-colored rubber mat that had been laid across a rise in the pavement serving as a wheelchair ramp (leading up to the sidewalk). Although Benefield was a frequent customer of TGS and had walked across this same rubber mat on numerous occasions, she, nevertheless, tripped

---

[1] *See, e.g., McCaskill v. Carillo*, 263 Ga. App. 890, 890 (589 SE2d 582) (2003) ("On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant") (citations omitted).

on a curled-up corner of the mat that afternoon and fell hard to the ground. As a result of her fall, she suffered abrasions and a broken wrist, and was unable to get back on her feet. Lying on the ground, Benefield cried out for help, but the sole TGS clerk working inside the store could not hear her pleas for assistance. Consequently, she did not receive assistance until another customer arrived at the store approximately 20 minutes later.

Thereafter, Benefield sued TGS to recover damages for the injuries she suffered as a result of her trip and fall on the rubber mat located outside the convenience store. TGS filed an answer, and discovery ensued. In her deposition testimony, Benefield acknowledged that the subject mat had been in place for several months and that she had walked over it on numerous occasions. However, she further testified—during her deposition and by affidavit—that because she was not looking down during her walk up to the store, she did not notice until after her fall that a corner of the mat had curled up, causing her to trip and fall. No employees of TGS were deposed, but both the store's manager and its sole employee, who was on duty at the time of the accident, filed affidavits, averring that they had inspected the interior and exterior of the store, as well as the surrounding parking lot, for debris when the store opened in the morning, pursuant to a duty list that was distributed to all employees. The duty list, which was filed as an exhibit to both of the foregoing affidavits, directed that "[e]ach employee is responsible for keeping the store neat and tidy, inside and out, at all times," as well as "[k]eeping the outside area free of debris (trash, cigarette butts, leaves, etc.)." Additionally, the store manager's affidavit specifically averred that she inspected the subject rubber mat when the store opened on the morning of the accident and did not notice any curling of its corners.

After discovery concluded, TGS filed a motion for summary judgment, arguing that it could not be held liable for Benefield's injuries because it had no constructive knowledge of the hazard posed by the rubber mat and because Benefield had equal or superior knowledge of the open and obvious hazard. Benefield filed a response, arguing that genuine issues of material fact remained as to whether TGS's inspection procedures were reasonable and thus whether TGS had constructive knowledge of the hazard. The trial court concluded that TGS lacked superior knowledge of the hazard posed by the mat because it was open and obvious, and granted summary judgment in favor of TGS. This appeal follows.

1. In her sole enumeration of error, Benefield contends that the trial court erred in granting summary judgment in favor of TGS, arguing that genuine issues of material fact remain as to whether TGS lacked superior knowledge of the hazard posed by the rubber

mat that caused her to trip and fall. We agree.

The standards for summary adjudication are well settled. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] A summary judgment enjoys "no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met."[3] Indeed, in our de novo review of a trial court's grant of a motion for summary judgment, we are charged with viewing the evidence, "and all reasonable conclusions and inferences drawn from the evidence . . . in the light most favorable to the nonmovant."[4]

With regard to premises-liability cases, our Supreme Court has held that (1) "as a general proposition, issues of negligence, contributory negligence and lack of ordinary care for one's own safety are not susceptible of summary adjudication[,] but should [instead] be resolved by trial in the ordinary manner";[5] and (2) "[t]he trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff *only where the evidence is plain, palpable and undisputable.*"[6] In practical terms,

> this means that issues such as how closely a particular retailer should monitor its premises and approaches, what retailers should know about the property's condition at any given time, how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that, in general, must be answered by juries as a matter of fact rather than by judges as a matter of law.[7]

And in Georgia, a proprietor has a statutory duty to exercise ordinary care to keep its premises safe,[8] which "includes inspecting the premises to discover possible dangerous conditions of which the [proprietor] does not have actual knowledge, and taking reasonable

---

[2] OCGA § 9-11-56 (c).

[3] *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

[4] *McCaskill*, 263 Ga. App. at 890 (citations omitted); *see also Mairs v. Whole Foods Market Group*, 303 Ga. App. 638, 638 (694 SE2d 129) (2010) (same).

[5] *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (1) (493 SE2d 403) (1997) (citations and punctuation omitted).

[6] *Id.* (emphasis supplied).

[7] *American Multi-Cinema v. Brown*, 285 Ga. 442, 445 (2) (679 SE2d 25) (2009); *see also Mairs*, 303 Ga. App. at 641 (1) (same).

[8] *See* OCGA § 51-3-1.

precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises."[9] Nevertheless, in order for a plaintiff to recover damages for injuries sustained in a slip-and-fall action, "an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier."[10] A plaintiff's evidentiary proof concerning the second prong of this test is not, however, "shouldered until the defendant [first] establishes negligence on the part of the plaintiff."[11] Finally, we have previously held that "[f]loor mats subject to periodic folding, bunching, rolling, and shifting can constitute hazards for which landowners may be liable."[12] With the foregoing principles in mind, we now consider Benefield's sole enumeration of error.

As noted supra, the trial court's order granting summary judgment in favor of TGS held that it lacked superior knowledge of the hazard posed by the rubber mat. As such, we initially focus our analysis on TGS's knowledge of the hazard at issue in the case sub judice. And when, as here, it is undisputed that TGS "lacked actual knowledge of any alleged hazard, the case turns on whether constructive knowledge of the alleged hazard can be imputed to the [store]."[13] Constructive knowledge may be shown by demonstrating that (1) an employee of the defendant was in the immediate vicinity of the fall and had an opportunity to correct the hazardous condition prior to the fall, or (2) the hazardous condition had existed for a sufficient length of time that it would have been discovered and removed had the proprietor exercised reasonable care in inspecting the premises.[14]

In the case sub judice, it is undisputed that Benefield presented no evidence that the sole TGS employee on duty at the time of the accident was in her immediate vicinity when she tripped and fell to the ground. In fact, Benefield acknowledged that the TGS clerk was inside the store when the accident occurred and was unable to hear

---

[9] *Robinson*, 268 Ga. at 740 (1) (citations omitted).

[10] *Id.* at 748-49 (2) (b); *see also Shepard v. Winn Dixie Stores*, 241 Ga. App. 746, 747 (527 SE2d 36) (1999) (same).

[11] *Robinson*, 268 Ga. at 748-49 (2) (b).

[12] *Valentin v. Six Flags Over Ga.*, 286 Ga. App. 508, 510 (649 SE2d 809) (2007) (citation and punctuation omitted); *see also Whatley v. Nat. Svcs. Indus.*, 228 Ga. App. 602, 603 (1) (492 SE2d 343) (1997) (same).

[13] *Blocker v. Wal-Mart Stores*, 287 Ga. App. 588, 589-90 (651 SE2d 845) (2007) (citation and punctuation omitted); *Washington v. J. D. Royer Wholesale Florist*, 275 Ga. App. 407, 408 (620 SE2d 626) (2005) (same).

[14] *See, e.g., Gibson v. Halpern Enterprises*, 288 Ga. App. 790, 791 (655 SE2d 624) (2007); *Bolton v. Wal-Mart Stores*, 257 Ga. App. 198, 198 (570 SE2d 643) (2002).

her cries for help. Nevertheless, Benefield vigorously disputes TGS's assertion that it exercised reasonable care in inspecting the premises on the day of her accident. And in this respect, we have previously held that "[c]onstructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure."[15] Thus, in order to prevail at the summary-judgment stage based on a lack of constructive knowledge, "the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident."[16] Additionally, in order to withstand a motion for summary judgment, "the plaintiff need not show how long the hazard had been present unless the owner has [first] demonstrated its inspection procedures."[17]

And here, the TGS employee duty list provides generally that the outside of the store is to be kept neat and tidy at all times and, more specifically, that all shifts are responsible for keeping the outside area free of debris. The duty list, however, makes no mention of how frequently the outside area must be checked by the store's employees. Moreover, even were we to assume that the TGS duty list established a reasonable inspection procedure, "[t]he evidence must establish an adherence to customary inspection procedures on the day in question and not simply that such procedures exist."[18] But here, the only evidence that the rubber mat at issue was specifically checked on the day of Benefield's fall is the affidavit of TGS's store manager, which averred that she checked the mat before the morning shift—which, according to the affidavit of the employee on duty that day, began at 7:00 a.m. The evidentiary record shows then, that approximately *five hours elapsed* between the time the mat was definitively last checked and Benefield's fall.

Nevertheless, TGS argues that its inspection procedures were reasonable as a matter of law. We have held, however, that "when the nature of a business is likely to produce a spill or other hazard, frequent inspections may be necessary, and the reasonableness of an inspection program is a question to be decided by the jury."[19] In this

---

[15] *Davis v. Bruno's Supermarkets*, 263 Ga. App. 147, 148-49 (1) (587 SE2d 279) (2003) (citation and punctuation omitted); *Shepard*, 241 Ga. App. at 748 (same).

[16] *Davis*, 263 Ga. App. at 148-49 (1) (citation and punctuation omitted); *Shepard*, 241 Ga. App. at 748 (same).

[17] *Davis*, 263 Ga. App. at 148-49 (1) (citation and punctuation omitted); *Shepard*, 241 Ga. App. at 748 (same).

[18] *Valentin*, 286 Ga. App. at 511 (citation and punctuation omitted); *see Quarles v. Ga. Svc. Systems*, 263 Ga. App. 563, 565 (588 SE2d 338) (2003) (same); *Higgins v. Food Lion*, 254 Ga. App. 221, 223 (561 SE2d 440) (2002) (same); *Ingles Markets v. Martin*, 236 Ga. App. 810, 812 (513 SE2d 536) (1999) (same).

[19] *Crook v. Racetrac Petroleum*, 257 Ga. App. 179, 181 (570 SE2d 584) (2002); *see Shepard*,

respect,

> [t]he length of time [a hazard] must remain on the [ground] before the owner should have discovered it and what constitutes a reasonable inspection procedure vary with each case, depending on the nature of the business, the size of the store, the number of customers, the nature of the dangerous condition, and the store's location.[20]

And while TGS characterizes itself as a small country store with infrequent patronage, which it claims is shown by the fact that nearly 20 minutes elapsed before another customer arrived to discover Benefield injured and lying on the ground, its business includes a convenience store and a gasoline station. Suffice it to say, hazardous spills and debris are certainly not uncommon at this type of establishment, and therefore, inspections may be required more frequently than every five hours.[21] Additionally, the fact that TGS was not aware of any prior incidents involving the mat in no way absolves it of liability because "[a] prior fall is not a necessary precursor to knowledge that a . . . mat poses a hazard."[22] Given the foregoing circumstances, we simply cannot hold *as a matter of law* that TGS's inspection procedures were reasonable and that it lacked constructive knowledge of the hazard posed by the rubber mat.[23]

TGS also argues, and the trial court agreed, that summary judgment was warranted because the curled-up corner of the rubber

---

241 Ga. App. at 748-49 (1) (same).

[20] *Crook*, 257 Ga. App. at 181 (citation and punctuation omitted), *see Shepard*, 241 Ga. App. at 748 (1).

[21] *See Crook*, 257 Ga. App. at 181 (finding that spills at gasoline stations are not uncommon and, therefore, whether inspections were required more frequently than every two hours was a jury question).

[22] *Valentin*, 286 Ga. App. at 512 (citation and punctuation omitted); *see also Whatley*, 228 Ga. App. at 605 (1).

[23] *See, e.g., Gibson*, 288 Ga. App. at 792-93 (finding that whether a weekly inspection of a shopping center's parking area was reasonable was a jury question); *Davis*, 263 Ga. App. at 150 (2) (holding that whether a supermarket's policy of inspecting aisles every 30 minutes was reasonable was for a jury to determine); *Crook*, 257 Ga. App. at 181 (holding that whether a gas station's inspections were required more frequently than every two hours was a jury question); *Shepard*, 241 Ga. App. at 748-49 (1) (finding that it was for a jury to determine whether grocery store's procedure of inspecting aisles every 30 minutes was reasonable); *J. H. Harvey Co. v. Reddick*, 240 Ga. App. 466, 471 (1) (b) (522 SE2d 749) (1999) (holding that whether inspecting floor of grocery store slightly less than two hours prior to plaintiff's fall was a jury question); *Jones v. Krystal Co.*, 231 Ga. App. 102, 104-05 (d) (498 SE2d 565) (1998) (holding that failure to inspect floor of fast food restaurant for 20 minutes or longer could be unreasonable). *But see Quarles*, 263 Ga. App. at 565 (finding that inspection of mat outside of restaurant one hour and fifteen minutes prior to plaintiff's fall was reasonable as a matter of law).

mat was an open and obvious hazard, and therefore, Benefield had at least equal knowledge of its existence. Contrary to this contention, however, whether Benefield exercised reasonable care on the day of her accident is a question for resolution by a jury. Thus, while Benefield testified that she was looking straight ahead and not down when she tripped over the turned-up corner of the mat, "that does not mean, as a matter of law, that she was not using ordinary care for her own safety."[24] Indeed, our Supreme Court "has rejected any requirement that an invitee look continuously at the floor for defects, holding that the invitee is entitled to assume that the owner/occupier has exercised reasonable care to make the premises safe."[25] In sum, the evidence in the case sub judice was not plain, palpable, and undisputed on this issue,[26] and therefore the trial court erred in granting summary judgment to TGS.

2. In its brief, TGS moves for the dismissal of Benefield's appeal on the ground that her brief was electronically filed one day *after* the date it was due. In considering this request, we begin by noting that Court of Appeals Rule 41 (b) directs, inter alia, that "[n]o motions or responses to motions shall be filed in the body of briefs. . . ." In light of this fact, as well as OCGA § 5-6-30's admonition that "the rules governing appellate practice should be liberally construed to result in a decision on the merits of a case,"[27] we deny TGS's "motion" to dismiss.

*Judgment reversed. Barnes, P. J., concurs. Blackwell and Dillard, JJ., concur dubitante.*

BLACKWELL, Judge, concurring dubitante.

I concur dubitante[28] in the opinion of the majority because it is a correct application of a principle of law adopted 13 years ago by our Court sitting en banc, and although I doubt the soundness of that principle, this case is not, I think, a proper occasion for the Court to revisit it.

---

[24] *Davis*, 263 Ga. App. at 150 (3).

[25] *Id.*; *see Robinson*, 268 Ga. at 743 (1).

[26] *See, e.g., Davis*, 263 Ga. App. at 150-51 (3) (holding that whether plaintiff exercised reasonable care was a jury issue despite plaintiff's testimony that she was talking to her son when she fell); *Shepard*, 241 Ga. App. at 749 (2) (holding that the fact that plaintiff could have seen hazard if she had been looking down did not constitute a failure to exercise ordinary care as a matter of law).

[27] *Blanton v. Duru*, 247 Ga. App. 175, 176 (1) (543 SE2d 448) (2000).

[28] A concurrence dubitante is a concurrence that is given doubtfully. Unlike a concurrence in the judgment only or a special concurrence without a statement of agreement with all that is said—which, according to our Rule 33 (a), renders a decision physical precedent only—a concurrence dubitante is a full concurrence, albeit one with reservations. See *Carter v. State*, 196 Ga. App. 226, 229-30 (395 SE2d 891) (1990) (Deen, J., concurring dubitante).

Since the decision of our Supreme Court in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), it has been settled that a defendant is entitled to summary judgment if the plaintiff is unable to come forward with evidence sufficient to satisfy each essential element of proof for which he bears the burden. And since the decision in *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327) (1980), it also has been settled that, when a plaintiff seeks to recover in premises liability for injuries sustained when he, while visiting the premises of another, slipped upon a foreign substance and fell, the plaintiff must prove, among other things, "that the defendant had actual or constructive knowledge of the foreign substance." 246 Ga. at 623. *Alterman* also made clear that, when a plaintiff seeks to prove constructive knowledge with evidence that the defendant failed to exercise reasonable care to inspect and keep the premises in a safe condition, the plaintiff must come forward with evidence "that the foreign substance was on the floor for a length of time sufficient for knowledge of it to be imputed to the defendant." Id. at 622-23. To my knowledge, our Supreme Court never has sounded a retreat from these requirements of *Alterman*, although it has adjusted other elements of the proof required in slip-and-fall cases. See, e.g., *Robinson v. Kroger Co.*, 268 Ga. 735, 748-49 (493 SE2d 403) (1997).

It would seem then, under *Lau's Corp.* and *Alterman*, that, when a plaintiff in a slip-and-fall case seeks to prove constructive knowledge with evidence that the defendant failed to exercise reasonable care to inspect and keep the premises in a safe condition, the defendant is entitled to summary judgment if the plaintiff cannot produce any evidence of the length of time that the foreign substance was on the floor. But our Court, sitting en banc, decided otherwise in *Straughter v. J. H. Harvey Co.*, 232 Ga. App. 29 (500 SE2d 353) (1998). In that case, we said that, "in order to withstand a motion for summary judgment, a plaintiff need not show how long a substance has been on the floor unless the defendant has established that reasonable inspection procedures were in place and followed at the time of the incident." 232 Ga. App. at 30 (1).

It is the principle adopted in *Straughter* on which the majority relies when it concludes that Taylor's Gin Store is not entitled to summary judgment in this case,[29] and assuming the soundness of the principle, the majority, I think, reaches the correct result. But I have serious doubts about the soundness of the principle. My reasons for doubting it include those set forth in the well-reasoned dissenting

---

[29] The majority cites *Davis v. Bruno's Supermarkets*, 263 Ga. App. 147 (587 SE2d 279) (2003), and *Shepard v. Winn Dixie Stores*, 241 Ga. App. 746 (527 SE2d 36) (2000), as authority for this principle. *Davis* itself cites *Shepard*, and *Shepard* cites *Straughter*.

opinion in *Straughter*, see id. at 33-40 (Andrews, J., dissenting), as well as the absence of any endorsement of the principle by our Supreme Court in the 13 years since *Straughter* was decided.

But my doubts about the soundness of the *Straughter* principle are not reason enough to revisit it in this case. As a general principle, "[t]he application of the doctrine of stare decisis is essential to the performance of a well-ordered system of jurisprudence." *Etkind v. Suarez*, 271 Ga. 352, 357 (5) (519 SE2d 210) (1999). And without question, "[i]t is the duty of appellate judges to make concessions to *stare decisis*." *Partridge v. State*, 218 Ga. App. 580, 583 (462 SE2d 415) (1995) (Beasley, C. J., concurring specially). Such concessions are, in my view, especially appropriate when the precedent to which we defer was decided not merely by a panel of this Court, but by the full Court sitting en banc. After all, to reconsider a decision of the en banc Court, we would have to convene another en banc Court, something that is "costly to an appellate court in terms of consumption of its always limited resources of judicial time and energy." *Lewis v. McDade*, 250 F3d 1320, 1320 (11th Cir. 2001) (Edmondson, J., concurring in denial of suggestion of rehearing en banc). We should not revisit earlier decisions—especially decisions rendered en banc—without a compelling reason.

Here, I see no compelling reason to revisit *Straughter.* The application of the *Straughter* principle in this case implicates neither the constitutional prerogatives of the People nor the constitutional rights of any individual. This case is a dispute between private parties, not between an individual and his government. There is no indication that the principle has caused confusion, has been difficult for the trial courts to apply consistently, or has led to conflicting decisions in our Court. I am aware of no intervening legislation or decision of our Supreme Court that further erodes the already questionable foundation of the principle. And no party in this case even asks us to revisit the principle, which, in my view, is a consideration of great significance. To the contrary, both parties embrace the analytical framework adopted in *Straughter*, disagreeing merely about its proper application in this case. In these circumstances,[30] I am willing to adhere to *Straughter* for the purposes of this appeal, notwithstanding my serious doubts about the correctness of that decision.

Accordingly, I concur dubitante.

I am authorized to state that Judge Dillard joins in this opinion.

---

[30] I do not intend in this opinion to set forth an exhaustive listing of the factors that might properly be considered when we decide whether to revisit a prior decision. In some other case, a consideration of other factors might also be appropriate.

DECIDED MARCH 22, 2011.

*Jack F. Witcher, Daniel B. Greenfield*, for appellant.
*Mozley, Finlayson & Loggins, Allison M. Escott*, for appellee.

