## A11A1622. WILLIAMS v. GK MAHAVIR, INC.
### (726 SE2d 71)

PHIPPS, Presiding Judge.

In this slip and fall case, Vanessa Williams appeals the grant of summary judgment in favor of GK Mahavir, Inc. d/b/a Best Western Dawson Village Inn ("Best Western"). Williams contends the trial court erred by determining: that Best Western did not cause the slip and fall which resulted in her injury, that she failed to show that Best Western had actual or constructive knowledge of a substance on the floor, and that Best Western discharged its burden on the issue of actual or constructive knowledge of a substance on the floor. For the reasons that follow, we reverse.

> On appeal from the grant of summary judgment this [c]ourt conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

The record shows that on the day of the incident, Williams and her two sons walked from their hotel room to the hotel lobby, in search of the swimming pool. They walked through the lobby area until they reached a door through which Williams looked to determine whether they could get to the pool. Williams then turned to go another route, and she slipped and fell on a substance that appeared to be water. Williams deposed that she did not know the source of the water on which she had slipped, but that after her fall she saw water underneath a nearby table in the kitchen and dining area and thought the water came from there. Williams deposed that she was watching where she was walking, but did not see the substance on the floor before she fell.

A front-desk employee on duty that day from 2:00 p.m. to 10:00 p.m. deposed that the incident occurred around 7:00 p.m. She stated that the maintenance man usually left for the day by 4:00 p.m.; and that the housekeeping staff usually left for the day by 3:00 p.m. After they left, she held the sole responsibility for maintenance issues as well as for checking in guests. The employee deposed that spills in the kitchen and dining area of the lobby usually occurred in the mornings during breakfast; but even after breakfast, there were times when guests dined in the kitchen and dining area of the lobby. The employee deposed that on the day of the incident, she was stationed at the front desk, but did not see Williams fall because she

---

[1] *Jones v. Kirk*, 290 Ga. 220, 221 (719 SE2d 428) (2011) (citation omitted).

could not see "around [a] little corner," from where she was positioned. The employee stated that at "no time prior to [Williams]'s fall did [she] observe any water on the lobby floor." The employee deposed that "no more than five seconds" before Williams fell, a family had come through the lobby with a cooler.

The manager deposed that hotel guests could access the swimming pool by walking through the lobby, and that guests walking through the lobby from the pool would sometimes track water on the floor. When asked whether the hotel had a schedule or policy in place to direct staff persons as to how often to inspect the lobby area of the hotel, the manager replied that it was an "everyday job." When asked whether there were any special instructions related to the pool area, the manager replied that the staff needed no special instructions and that they were "quite aware of their responsibilities," but he did not specify those responsibilities. The manager was then asked how often the lobby area was inspected to see whether it was clean, and he replied that his staff cleaned the lobby area "only if it needed to be cleaned," and that there was no time frame in which a staff person was required to walk through to see whether the floors of the lobby area needed cleaning. The manager stated that immediately prior to Williams's fall, he had been monitoring a security camera from his office and did not see any substance on the floor in the area where Williams fell.

In granting Best Western's motion for summary judgment, the trial court found that Best Western "discharged its burden by showing a lack of evidence regarding the issue of any knowledge it might have had, actual or constructive, of any foreign substance on the floor of [Best Western]'s hotel lobby that might have caused [Williams] to slip and fall." The court further found that Williams failed to "meet her burden by not pointing to any specific evidence in the record giving rise to a triable issue of fact regarding [Best Western]'s knowledge." We disagree and find a jury question exists concerning whether Best Western had constructive knowledge.

A defendant may prevail at summary judgment by showing the court that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]

"Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises

---

[2] OCGA § 9-11-56 (c).

and approaches safe."[3]

> In order to state a cause of action in a case where the plaintiff alleges that due to an act of negligence by the defendant he slipped and fell on a foreign substance on the defendant's floor, the plaintiff must show (1) that the defendant had actual or constructive knowledge of the foreign substance and (2) that the plaintiff was without knowledge of the substance. . . . Thus, in order for a defendant to successfully move for summary judgment in a foreign substance slip and fall case, it must come forward with evidence tending to show that (1) it had neither actual nor constructive knowledge of the foreign substance or that (2) plaintiff had knowledge of the substance.[4]

The owner or occupier's constructive knowledge of the hazard can arise from the failure to exercise reasonable care in inspecting the premises to keep them safe.[5] "As to the duty to keep the premises safe, the owner has a duty to exercise ordinary care in keeping the premises safe."[6]

> When undertaking the duty to keep the premises safe by the exercise of ordinary care, this includes inspecting the premises to discover anticipated dangerous conditions about which the owner does not have actual knowledge and taking reasonable precautions to protect invitees from dangers foreseeable from the use of the premises.[7]

As a guest at Best Western, Williams was an invitee on the property, and Best Western may be liable to her for injuries caused by its failure to exercise ordinary care in keeping the premises and approaches safe.[8] There was no evidence that the employee on duty at the time of the incident was in Williams's immediate vicinity when she slipped and fell; Williams testified that she did not see any substance on the floor before she fell; and the employee and manager

---

[3] OCGA § 51-3-1.

[4] *Mallory v. Piggly Wiggly Southern*, 200 Ga. App. 428 (1) (408 SE2d 443) (1991) (citations and punctuation omitted); see *Gibson v. Halpern Enterprises*, 288 Ga. App. 790, 791 (655 SE2d 624) (2007).

[5] *Jones v. Krystal Co.*, 231 Ga. App. 102, 104 (d) (498 SE2d 565) (1998).

[6] Id. (citations and punctuation omitted).

[7] *Roberts v. Wal-Mart Stores*, 287 Ga. App. 316, 317 (651 SE2d 464) (2007) (citations omitted).

[8] OCGA § 51-3-1; *Rasnick v. Krishna Hospitality*, 289 Ga. 565, 567 (1) (713 SE2d 835) (2011) (innkeepers have the duty to exercise ordinary care to provide their guests with premises that are reasonably safe for the guests' use and occupancy).

swore that they did not see any water on the floor of the lobby area that day, prior to Williams's fall. Therefore, the evidence shows that neither Williams nor Best Western had actual knowledge of any foreign substance on the floor of the hotel lobby. Thus, the case turns on whether Best Western had constructive knowledge.[9]

> Constructive knowledge may be shown in two ways: by showing that an employee of the defendant was in the immediate vicinity of the fall and had an opportunity to correct the hazardous condition before the fall; or by showing that the substance had been on the (ground) for a sufficient length of time that it would have been discovered and removed had the proprietor exercised reasonable care in inspecting the premises.[10]

But in order to withstand a motion for summary judgment, a plaintiff need not show how long the hazard had been present unless the owner has demonstrated that reasonable inspection procedures were in place and followed at the time of the incident.[11] "Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure[.]"[12]

Here, there was evidence that hotel employees cleaned the lobby area only if it needed to be cleaned, but there was no time frame in which an employee was required to walk through to determine whether the floors of the lobby needed cleaning. Thus, there was no evidence of a schedule within which the lobby area was inspected to discover dangerous conditions such as water tracks from guests leaving the swimming pool, food and beverage spills from the kitchen and dining area of the lobby, or spills otherwise caused by hotel guests walking through the lobby area. "[W]hen the nature of a business is likely to produce a spill or other hazard, frequent inspections may be necessary, and the reasonableness of an inspection program is a question to be decided by the jury."[13]

There was no evidence in the record of any particular time that a Best Western employee inspected or cleaned the lobby area on the day in question, or that there was any inspection program in place. The evidence showed that from approximately 4:00 p.m. until the incident occurred, hours later, one employee had been responsible for

---

[9] *Mallory*, supra at 429 (1); *Gibson*, supra.

[10] *Gibson*, supra.

[11] Id. at 791-792; *Avery v. Cleveland Avenue Motel*, 239 Ga. App. 644, 645-646 (2) (521 SE2d 668) (1999).

[12] *Gibson*, supra (punctuation and footnotes omitted).

[13] *Crook v. Racetrac Petroleum*, 257 Ga. App. 179, 181 (570 SE2d 584) (2002) (citation omitted).

maintenance of the lobby area, in addition to her duties of checking in guests.

> In the absence of evidence that [Best Western employees] conducted (any) reasonable inspection of the premises that would have discovered the foreign substance that caused the slickness on the floor, [Williams] was not required to present evidence establishing the length of time that the substance had been allowed to remain on the floor.[14]

Under the evidence, we cannot say as a matter of law that Best Western's inspection procedures, if any, were reasonable. Instead, the evidence presents a jury question, and the trial court erred in granting summary judgment as a matter of law to Best Western.[15]

> [I]ssues such as how closely a particular retailer should monitor its premises and approaches, what retailers should know about the property's condition at any given time, how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that, in general, must be answered by juries as a matter of fact rather than by judges as a matter of law.[16]

*Judgment reversed. McFadden, J., concurs fully and specially. Andrews, J., concurs dubitante.*

MCFADDEN, Judge, concurring fully and specially.

I concur fully in the majority opinion. I write separately to suggest that the concurrence dubitante is better addressed to our General Assembly than to our Supreme Court.

The duty at issue here is founded not only on general principles of tort law, but primarily on a statute that dates back to the Code of 1895.

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordi-

---

[14] *Jones v. Krystal Co.*, supra at 106 (e) (citations and punctuation omitted).

[15] *Barge v. Melvin Carmichael Enterprises*, 252 Ga. App. 725, 727-728 (556 SE2d 906) (2001) (grant of summary judgment to grocery store reversed where there were "almost no" inspection procedures in place at the time of the incident; store aisles were checked in the morning, but there was no set interval for inspection thereafter).

[16] *American Multi-Cinema v. Brown*, 285 Ga. 442, 445 (2) (679 SE2d 25) (2009).

nary care in keeping the premises and approaches safe.

OCGA § 51-3-1. The duty created by that statute "includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises." (Citations omitted.) *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997).

Here the evidence would authorize a factfinder to conclude that the hotel neglected its duty to perform reasonable inspections. And a factfinder would be authorized to find that it is because of that neglect that there is no evidence about how long the substance on which the plaintiff fell had been on the floor. The concurrence dubitante would hold that the plaintiff's claim is defeated as a matter of law by that lack of evidence, overturning the line of cases holding that constructive knowledge may be inferred from a land owner or occupier's failure to follow a reasonable inspection procedure. See *Gibson v. Halpern Enterprises*, 288 Ga. App. 790, 791-792 (655 SE2d 624) (2007). While defensible under general principles of law, such a holding would frustrate the legislative intent expressed in OCGA § 51-3-1. Such a holding would encourage land owners and occupiers to neglect the duties imposed upon them by the statute and thereby increase the danger to the public which the statute seeks to reduce.

ANDREWS, Judge, concurring dubitante.

This Court is again confronted with a slip and fall premises liability claim where: (1) an essential element of the claim is that the foreign substance which caused the plaintiff to slip and fall had been on the floor of the premises for a length of time sufficient for constructive knowledge of the substance to be imputed to the premises owner; and (2) there is no evidence in the record as to how long the foreign substance had been on the floor. Again, in contravention of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), this Court refuses to consider the premises owner's right to summary judgment on the basis that there is an absence of evidence in the record to establish an essential element of the plaintiff's claim. Instead, in contravention of *Lau's Corp.*, this Court again imposes on the premises owner a duty on summary judgment to produce evidence of adherence to reasonable inspection procedures before this Court will recognize the absence of evidence to support the plaintiff's claim. It continues to escape this Court's attention that, even if the premises owner failed to inspect the premises, in the absence of any evidence that the substance had been on the floor long enough to have been discovered by a reasonable inspection, no jury can find that the owner had constructive knowledge, and no jury can

find that the owner's failure to inspect was a proximate cause of the slip and fall.

Nevertheless, because this Court has previously refused to even address these arguments (see *Straughter v. J. H. Harvey Co.*, 232 Ga. App. 29 (500 SE2d 353) (1998) (Andrews, C. J., dissenting) and *J. H. Harvey Co. v. Reddick*, 240 Ga. App. 466 (522 SE2d 749) (1999) (Andrews, P. J., dissenting)), I conclude that another dissent at this time would be futile. In the hope that our Supreme Court may soon grant certiorari to address the application of *Lau's Corp.* in this kind of premises liability claim, I concur dubitante. See *Benefield v. Tominich*, 308 Ga. App. 605 (708 SE2d 563) (2011) (Blackwell, J., joined by Dillard, J., concurring dubitante in a similar premises liability claim).

DECIDED FEBRUARY 24, 2012 —
RECONSIDERATION DENIED MARCH 13, 2012 —

*Fred J. Rushing, Jr.*, for appellant.
*Skedsvold & White, Craig R. White, Bryce W. Mowbray III*, for appellee.