A98A2374. LINDSEY et al. v. GEORGIA BUILDING AUTHORITY.
(509 SE2d 749)

Judge Harold R. Banke.

After Samuel L. Lindsey tripped and fell on the steps of the Georgia Railroad Freight Depot, he and his wife Carolyn Lindsey sued the Georgia Building Authority ("GBA"), which operated the Depot. The trial court granted the GBA's motion for summary judgment and the Lindseys appeal, enumerating two errors.

The Lindseys entered the Depot around 6:30 p.m. on July 21 to

attend a rehearsal dinner. It was still light as they walked up the left side of the brick steps to the front door. The weather was clear and dry.

At around 9:15, the Lindseys left though the same door. They walked down the first four steps and across a brick landing toward the next set of steps when Samuel Lindsey's left insole purportedly caught and he fell forward. Although Lindsey was injured, he was able to attend the wedding the next day.

At the time, neither Lindsey nor his wife knew what caused him to fall. Mrs. Lindsey looked at the steps after the fall, but saw "absolutely nothing" there.

A week later, the Lindseys returned to the Depot to figure out what caused the fall, taking a camera and video. After examining the steps and reconstructing the incident, they concluded that a single raised brick on the edge of the landing precipitated the fall. Samuel Lindsey reasoned that because he was walking in the approximate area of the brick, it must have caused his fall. However, Lindsey's testimony of how he reconstructed his path was equivocal. At one point, he testified that he had exited at the center of the double doors and walked down the front steps, "down the center . . . of the terrace." But he also testified that "my wife and I, we came down the center steps across a terrace and we were walking at an angle because we had to go back the same way we had come out and then upstairs and so forth to go to the car." In some of the Lindseys' photographs of the steps, the differentiation in the brick is not visible; however, some may show a height difference of somewhere between one-eighth and one-half inch. The Lindseys offered the affidavit of Deborah Hyde, Ph.D., who attested that variations in the depth of adjacent bricks exceeding three-sixteenths of an inch violated the Standard Building Code. The parties presented no evidence of the brick's actual height compared to that of its neighbors. Nor did Hyde testify that the brick at issue violated any applicable code.

In granting summary judgment, the trial court found that the Lindseys failed to establish the GBA's prior knowledge of the allegedly dangerous condition. It also observed that they failed to present facts establishing beyond mere speculation that the allegedly uneven brick caused the fall. *Held*:

1. The Lindseys argue that the GBA's actual or constructive knowledge of the brick was a disputed fact precluding summary judgment. They base this contention on evidence that (1) the brick had been raised since it was laid, (2) the GBA had controlled the property for 11 years, (3) the GBA had no inspection procedures in place, and (4) GBA employees were regularly in the immediate area of the brick.

To recover for his injuries, Samuel Lindsey had to demonstrate fault on the GBA's part and his own ignorance of the danger. *Steele v.*

*Rosehaven Chapel,* 233 Ga. App. 853, 854 (505 SE2d 245) (1998). "Proof of a fall, without more, does not give rise to liability." *Dickman v. South City Mgmt.,* 229 Ga. App. 289, 290 (494 SE2d 64) (1997) (physical precedent only). To hold otherwise makes proprietors insurers of their patrons' safety in contravention of Georgia law. *Robinson v. Kroger Co.,* 268 Ga. 735, 740 (1) (493 SE2d 403) (1997).

Testimony from the Depot's building superintendent indisputably established that maintenance personnel crossed the area 30 to 40 times daily, the bricks were swept each day and the GBA had a general policy of searching for and reporting hazards. The superintendent also testified that the alleged defect was visually undetectable. The record contains no evidence that anyone else had previously tripped on that brick, despite continuous use of the Depot for years. Further, as the Lindseys concede, the brick at issue was a permanent static condition and not a transient foreign substance. *Steele,* 233 Ga. App. at 854.

The Lindseys' own testimony shows that the alleged defect was extremely difficult to see. During his deposition, Mr. Lindsey was unable to identify the brick in some photographs shown to him. At the time of the fall, neither Lindsey was able to ascertain the cause. Mr. Lindsey only found the brick days later, after a search of several minutes, solely by deducing that because the brick was allegedly raised and he had walked in its general proximity, it had to have caused his fall. But his inconsistent testimony about his exit from the Depot undermines this theory. One version indicates that he followed the same path he used when entering; the other asserts that he walked down the center. See *Dickman,* 229 Ga. App. at 291. Under either, summary judgment was proper because the alleged defect was, by the Lindseys' own admission, so difficult to detect. Constructive knowledge can only be inferred with proof that the proprietor or its agent could have easily discovered and corrected the alleged hazard. *Rodriquez v. City of Augusta,* 222 Ga. App. 383, 384 (1) (474 SE2d 278) (1996). No such evidence is extant. Absent proof of the essential element of constructive or actual knowledge of the purportedly dangerous condition, we must affirm. *Steele,* 233 Ga. App. at 855.

2. In light of our finding in Division 1, we need not reach the second enumeration.

*Judgment affirmed. Johnson, P. J., and Smith, J., concur.*

DECIDED NOVEMBER 25, 1998 —
RECONSIDERATION DENIED DECEMBER 10, 1998.

*Hewitt, Katz & Dumich, Robert N. Katz, Robert K. Finnell,* for appellants.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Brenda A. Raspberry, Assistant Attorney General*, for appellee.