## A02A0033. CHASTAIN et al. v. CF GEORGIA NORTH DEKALB, L.P. et al.

### (569 SE2d 914)

ANDREWS, Presiding Judge.

T. Z. Chastain and his wife appeal from the trial court's grant of summary judgment to defendants on his slip and fall claim[1] against North DeKalb Mall and Initial Contract Services, the company that provided janitorial service for the mall's common areas. Because the trial court correctly concluded that the Chastains were unable to show that the mall had actual or constructive knowledge of the water which caused the fall, we affirm.

In order to prevail on summary judgment, "the moving party must demonstrate that there are no genuine issues of any material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, support judgment as a matter of law." *Hutchins v. J. H. Harvey Co.*, 240 Ga. App. 582, 584 (524 SE2d 289) (1999). "A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." (Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

The undisputed facts in this case show that on the morning of the accident, Chastain and his wife went to North DeKalb Mall to walk. While walking through the common area of the mall, Chastain slipped and fell on what Mrs. Chastain described as a two and a half foot line of dribbled water. A passerby described the spill as "water sprinkled around on the marble floor in an area of approximately two feet."

North DeKalb and ICS submitted evidence of a continuous inspection policy, under which there was always at least one employee patrolling the mall looking for hazards, passing any one spot every 15-30 minutes. But, there was no evidence in the record from an employee who could state specifically that he or she had actually walked the mall during the period of time in question.

The trial court granted summary judgment to the mall, holding that there was no evidence that a reasonable inspection could have discovered the hazard. This appeal followed.

In order to show defendants were negligent, Chastain must present evidence that (1) the mall and ICS had actual or constructive knowledge of the water on the floor, and (2) he was without knowledge of the substance or was hindered from discovering it by the defendants. *Robinson v. Kroger Co.*, 268 Ga. 735, 736 (493 SE2d 403)

---

[1] Chastain's wife also sued for loss of consortium.

(1997). The Chastains do not contend that defendants had actual knowledge of the water. Accordingly, they must present some evidence of constructive knowledge on the part of North DeKalb and ICS.

A plaintiff may show constructive knowledge by two methods: (1) proof that an employee of North DeKalb or ICS was in the immediate area of the water and could have easily seen and removed it prior to the slip and fall; or (2) proof that the water had been in the mall for a sufficient length of time that defendants should have discovered and removed it during a reasonable inspection. *Alterman Foods v. Ligon*, 246 Ga. 620, 622-623 (272 SE2d 327) (1980). Although constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure, *Matthews v. The Varsity*, 248 Ga. App. 512, 513 (546 SE2d 878) (2001), that is not the case here because there is undisputed evidence that North DeKalb and ICS had a policy of continuous inspection for the common areas of the mall. But, we need not reach the issue of whether defendants' evidence was sufficient to show that they complied with their inspection procedures on the day in question.

If there is no evidence that the water could have been discovered during a reasonable inspection, then no inference arises that defendants' failure to discover the defect was the result of any alleged failure to inspect. *Hopkins v. Kmart Corp.*, 232 Ga. App. 515, 518 (502 SE2d 476) (1998). Here, the only evidence on this issue is that of Chastain and his wife as follows:

Q[uestion to Mr. Chastain]: Would the water on the floor have been easily visible to you if you had been looking down?
A: No.
Q: Would the water on the floor have been easily visible to others?
A: I don't know. If they had been looking for it, they might have seen it. But it was clear water. And the floor is shiny and it wasn't a puddle. It was just like somebody scattered some water around for two or three feet.
Q: Would it be fair to say that the scatters of water were not easily visible to you or anyone else?
A: I'd say so.
Q[uestion to Mrs. Chastain]: It was not a puddle?
A: It was not a puddle, no, it was not a puddle.
Q: Was there any color to the water?
A: No. It was clear. . . . The only way you could really see it was to kind of get like this and look down (indicating). And then you could see it because of the shiny floor.

Q: So you were there. As you were standing up, you couldn't see the water?
A: Unh-unh. You had to get down. When I got down and looked to see what had happened to him, I saw the water. And I saw his pants leg was wet.
Q: How far did you have to get down? Did you have to go all the way to the floor or on your knees or what?
A: No, no, you didn't have to get down on your knees, but you had to go kind of sideways to look down.

Accordingly, "summary judgment was proper because the alleged [hazard] was, by the [Chastains'] own admission, so difficult to detect. Constructive knowledge can only be inferred with proof that the proprietor or its agent could have easily discovered and corrected the alleged hazard." *Lindsey v. Ga. Bldg. Auth.*, 235 Ga. App. 718, 720 (509 SE2d 749) (1998). See also *Rodriquez v. City of Augusta*, 222 Ga. App. 383, 384 (474 SE2d 278) (1996) (admission that dangerous substance was not visible precludes finding that City employee could have easily noticed and corrected it).

Evidence that the water was not easily visible is especially important here, given that there was no puddle, only a small area of dribbled water, together with the sheer size of the area encompassed by the mall and the number of customers walking through the mall. See *Alterman Foods*, supra at 623; *Hutchins*, supra at 585. Accordingly, as the trial court correctly held, North DeKalb and ICS have successfully demonstrated that the Chastains are unable to show that the water could have been discovered during a reasonable inspection. Therefore, the Chastains have not shown that North DeKalb or ICS had either actual or constructive knowledge of the hazard. The trial court correctly granted summary judgment to North DeKalb Mall and ICS.

*Judgment affirmed. Johnson, P. J., Smith, P. J., and Mikell, J., concur. Blackburn, C. J., Miller and Phipps, JJ., dissent.*

PHIPPS, Judge, dissenting.
I respectfully dissent.
To establish constructive knowledge, an invitee must present evidence that *either*: (1) an employee of the owner or occupier "was in the immediate area of the dangerous condition and could have easily seen the substance and removed the hazard," *or* (2) the owner/occupier failed to exercise reasonable care in inspecting and keeping the premises in safe condition.[2] Constructive knowledge may also be

---

[2] (Punctuation omitted.) *Alterman Foods v. Ligon*, 246 Ga. 620, 622-623 (272 SE2d 327) (1980); *Hardee's Food Systems v. Green*, 232 Ga. App. 864, 866 (2) (502 SE2d 738) (1998).

inferred from evidence that the owner or occupier lacked a reasonable inspection procedure or failed to follow a reasonable inspection procedure at the time of the incident.[3] But if there is no evidence that following such a reasonable inspection and cleaning procedure would have resulted in the discovery and removal of a foreign substance, there logically can be no inference that the defendant had constructive knowledge of its existence.[4] "Conversely, where the evidence raises the inference that the foreign substance was discoverable pursuant to a reasonable inspection, a jury issue arises as to whether the defendant had constructive knowledge of what [a] reasonable inspection would have revealed."[5]

The majority concludes that summary judgment was proper because "by the Chastains' own admission, [the water was] so difficult to detect."[6] As support for this conclusion, the majority quotes *Lindsey v. Ga. Bldg. Auth.*,[7] which cites *Rodriquez v. City of Augusta*,[8] for the proposition that "[c]onstructive knowledge can only be inferred with proof that the proprietor or its agent could have easily discovered and corrected the alleged hazard."[9] However, that principle is not applicable here, where there is no evidence that an employee of the defendants was in the immediate vicinity of the dangerous condition.[10] *Lindsey* is inapposite. It involved not a transient foreign substance, as was the water in this case, but a permanent static condition. The *Lindsey* plaintiffs claimed and the evidence showed that the defendant's employees regularly had been in the immediate area of the allegedly dangerous static condition,[11] thus invoking the question of whether one of the defendant's employees could have "easily discovered" and corrected the alleged hazard. And although *Rodriquez* concerned a transient foreign substance, that case is also inapposite. There, the plaintiff claimed and the evidence showed that the defendant's employees had been in the immediate vicinity of the alleged hazard just before the plaintiff fell. Thus, that

---

[3] *Kauffman v. Eastern Food & Gas*, 246 Ga. App. 103, 104-105 (2) (539 SE2d 599) (2000).

[4] See *Blake v. Kroger Co.*, 224 Ga. App. 140, 142 (1) (480 SE2d 199) (1996), disapproved on other grounds, *Robinson v. Kroger Co.*, 268 Ga. 735, 747 (493 SE2d 403) (1997). Further, "*Robinson* focused on the issue of plaintiff's knowledge of the foreign substance, not the defendant's actual or constructive knowledge." *Lovins v. Kroger Co.*, 236 Ga. App. 585, 587 (1) (b) (ii) (512 SE2d 2) (1999). See also *Kroger Co. v. Brooks*, 231 Ga. App. 650, 655 (1) (b) (500 SE2d 391) (1998).

[5] *Brooks*, supra.

[6] (Punctuation omitted.)

[7] 235 Ga. App. 718 (509 SE2d 749) (1998).

[8] 222 Ga. App. 383 (474 SE2d 278) (1996).

[9] *Lindsey*, supra at 720; *Rodriquez*, supra at 384.

[10] See *Alterman Foods*, supra at 622-623; *Rodriquez*, supra.

[11] *Lindsey*, supra at 720.

method of proving constructive notice by showing that an employee of the owner/occupier could have "easily discovered" and corrected the alleged hazard was invoked and dispositive in *Rodriquez*.

But the issue of whether the owner/occupier could have "easily discovered" and removed the water is not dispositive in this case, where the Chastains do not allege nor does the evidence show that an employee was in the immediate vicinity of the water on the floor. The Chastains did not seek to establish constructive knowledge by alleging that an employee of the owner or occupier was in the immediate area of the dangerous condition and could have "easily discovered" and removed the water. Instead, they sought to establish constructive knowledge by showing that the owner/occupier or agent thereof failed to exercise reasonable care in inspecting the premises and by showing that the defendants failed to follow a reasonable inspection procedure at the time of the incident.[12]

Considering what the Chastains saw and determining that the water was not easily discoverable, the majority reaches the conclusion that there was no evidence that a reasonable inspection would have revealed and removed the water. But the evidence presented by the Chastains regarding the amount of water on the floor was sufficient to call into question whether a reasonable inspection would have discovered it. There was sufficient water on the floor to cause Chastain's fall, dampen his pants leg, and still span an area of two to three feet.[13] A shine on the floor's surface may have made the water less visible, but a reasonable inspection would have taken the floor's shine into account. Although the majority focuses on what was seen by Chastain and his wife, ages 78 and 71, respectively, and how they were able to see it, a reasonable inspection by the owner/occupier or agent thereof may have detected what was not readily noticeable to casual mall shoppers. It is important to remember that the duty to inspect lay not with the Chastains, but with the defendants' employees or agents, who would be more familiar with the mall's shiny flooring material and how to detect foreign substances thereon. Further, the record shows that the substance on the floor in this case was simply water, which would have required no special cleaning process.

The Chastains presented evidence, which when viewed in a light to favor them, raised an inference that the water was discoverable pursuant to a reasonable inspection. And although there was evi-

---

[12] See text accompanying footnotes 2 and 3 of the dissent, supra.

[13] Compare *Hardee's Food*, supra at 867 (2) (b) (grease on floor was invisible and would not have been discovered through a reasonable visual inspection or cleaned through reasonable procedure); *Blake*, supra at 144 (the evidence failed to show that a grocery store's supposed failure to inspect and clean caused its failure to discover an alleged wet spot, where the spot was barely visible, if at all, to those who crawled on the floor looking for it and it could not have been speculated that sweeping would have removed the hazard).

dence presented of a continuous inspection policy whereby mall workers would patrol the mall looking for hazards, as the majority states, there was no evidence in the record from an employee who could state specifically that he or she had actually done so during the period of time in question. Thus, a jury issue arises whether the defendants had constructive knowledge of what a reasonable inspection would have revealed.

I am authorized to state that Chief Judge Blackburn and Judge Miller join in this dissent.

DECIDED JULY 16, 2002 —
RECONSIDERATION DENIED JULY 30, 2002.

*Mitchell & Shapiro, Richard C. Mitchell,* for appellants.
*Hawkins & Parnell, Matthew F. Barr, Christine A. Sullivan, Thomas R. Mock, Jr., Gorby, Reeves, Peters & Burns, Michael S. Reeves, Christine A. Carson,* for appellees.