### A07A1955. FOOD LION, LLC v. WALKER.
(660 SE2d 426)

MILLER, Judge.

Gloria C. Walker suffered alleged injuries to her upper back, neck, left wrist, and knees when she slipped and fell in water-diluted chicken blood on the floor of a grocery store owned by Food Lion, LLC ("Food Lion"). Walker filed a complaint for personal injury. Food Lion thereafter moved for summary judgment, which motion the trial court denied. We granted Food Lion's application for interlocutory review of the trial court's order. Food Lion appeals, contending that the denial of its motion for summary judgment was error for Walker's failure to come forward with any evidence showing that it had superior knowledge of the alleged hazard. Discerning no error, we affirm.

> On appeal from a grant of summary judgment, we conduct a de novo review, and we view the evidence and the inferences drawn from it in the light most favorable to the nonmoving party. A defendant demonstrates entitlement to summary judgment by showing that the record lacks evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. The defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence. If the defendant does so, the plaintiff cannot rest on his pleadings, but must point to specific evidence that gives rise to a triable issue of fact.

(Citations omitted.) *O'Connell v. Cora Bett Thomas Realty*, 254 Ga. App. 311 (563 SE2d 167) (2002).

So viewed, the record shows that Walker slipped and fell at Food Lion's store at approximately 8:30 p.m., on August 6, 2004. The chicken blood she fell in was mixed with water and "real light" pink in color. It was not visible to a cashier who stood six to twelve feet away or to employees in the nearby store office.

Walker admitted that she fell the second time she walked through the area and that she did not see the blood either time before her fall.

She did not know whether it would have been visible if she had looked down while she was walking down the aisle because it was so "light" a color. She agreed that if she could not see the spill, "then neither could anybody else." In this regard, she also indicated that if she were "just standing there" and looking at the floor she "probably" could have seen it.

The Food Lion manager testified that at the time of Walker's fall, the store was having a sale on fresh chicken leg quarters which was a "good deal." He acknowledged that Food Lion places plastic bags in the area for customers to use when chicken is on sale; that leakage from the packaging involved was persistent enough to cause the store to place mops in the area; and, after Walker's fall, that the store had begun freezing most of its chicken for sale. Otherwise, he testified that "regardless of how you do[ ] it, you're going to have a certain amount of [chicken blood]" dripping on the floor, which he described as "see through" because of its water content.

Regarding the store's inspection policy, the manager testified that the floors are dust mopped every hour on the hour. A manager walks the store four times a day looking for floor conditions, and a written report is completed for each such inspection by the manager. The manager on duty at the time of the accident testified that he "had just come through that area fifteen or twenty minutes before" Walker fell and did not "see any wetness on the floor," although it is unclear in the record whether he was conducting an inspection at that time or simply walking through the area.

After reviewing the evidence, the trial court ruled that it could not

> conclude as a matter of law that Food Lion's inspection was reasonable under the circumstances. The length of time that a foreign substance must remain on the floor before a proprietor should have discovered it and what constitutes a reasonable frequency of inspections will vary with the circumstances of each case. Here, an employee had been through the area fifteen to twenty minutes earlier. . . . Here, the defendant was aware that certain meat products were on sale and that leakage was a natural hazard of that product. There is nothing to indicate that plaintiff possessed that knowledge. The court, therefore, cannot conclude as a matter of law that Food Lion's inspection procedure was reasonable under the circumstances. The jury must make that determination.

Our grant of Food Lion's application for interlocutory appeal followed.

1. Food Lion contends that the trial court should have granted summary judgment in its favor because Walker failed to show that it had actual or constructive knowledge of the chicken blood on the floor. Because it is undisputed that Food Lion lacked actual knowledge, we must determine whether a genuine issue of material fact remains as to its constructive knowledge. To establish constructive knowledge, Walker "must show that (1) a store employee was in the immediate area of the hazard and could have easily seen the substance or (2) the foreign substance remained long enough that ordinary diligence by the store employees should have discovered it." (Citation and punctuation omitted.) *Davis v. Bruno's Supermarkets*, 263 Ga. App. 147, 148 (1) (587 SE2d 279) (2003).

> Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure. In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident. In addition, to withstand a motion for summary judgment, the plaintiff need not show how long the hazard had been present unless the owner has demonstrated its inspection procedures.

(Citation and punctuation omitted.) Id. at 148-149 (1).

Walker asserts that she established constructive knowledge because Food Lion failed to establish that its inspection procedures were reasonable as a matter of law. Whether an inspection procedure is reasonable as a matter of law varies case-to-case, depending on the nature of the business, the size of the store, the number of customers, "the nature of the dangerous condition, and the store's location." *Shepard v. Winn Dixie Stores*, 241 Ga. App. 746, 748 (1) (527 SE2d 36) (1999). The nature of a supermarket's or a fast food restaurant's business "creates conditions which cause slip and falls to occur with some frequency. Under those circumstances, we have held that premises owners have a duty to inspect with greater frequency." *Patrick v. Macon Housing Auth.*, 250 Ga. App. 806, 812 (552 SE2d 455) (2001). When a proprietor has notice of the risk of a particular hazard, we have found that a jury question arises as to the reasonableness of a store's inspection procedure even when an inspection was performed 15 minutes before the plaintiff's fall. See *Burnett v. Ingles Markets*, 236 Ga. App. 865, 867 (514 SE2d 65) (1999) (store had knowledge of children throwing grapes in store); see also *Freeman v. Wal-Mart Stores*, 281 Ga. App. 132, 136 (2) (635 SE2d 399) (2006) (store had knowledge of leaning, rolled up mat that later fell).

Here, Food Lion knew that its fresh chicken leg quarters were on sale and that they inevitably dripped a mixture of blood and water on the floor. Based on these facts, the trial court properly concluded that a genuine issue of material fact existed as to whether Food Lion's inspection procedures in the area in which Walker fell were reasonable. See *Jones v. Krystal Co.*, 231 Ga. App. 102, 103-104 (b) (498 SE2d 565) (1998) (jury question remained as to whether inspection 20 minutes before plaintiff's fall in a fast food restaurant was reasonable under the circumstances).[1]

2. Food Lion asserts that it is also entitled to summary judgment because there was no evidence that it could have discovered the spill upon the exercise of ordinary care given the degree of difficulty in detecting it. Relying primarily upon our opinion in *Chastain v. CF Ga. North DeKalb*, 256 Ga. App. 802 (569 SE2d 914) (2002), Food Lion argues entitlement to summary judgment because a reasonable inspection could not have detected the spill. In *Chastain*, however, the plaintiff had testified that spilled water could not be seen from a standing position, such water was sprinkled not puddled, and the incident occurred in a busy shopping mall. Id. at 803-804.

We find that the facts now before us do not warrant application of the analysis employed in *Chastain*. Here, unlike *Chastain*, the evidence shows that the spill was visible from a standing position and that Food Lion was on notice of the risk of the particular hazard that caused Walker to fall: chicken blood on the floor from leaking packaging. Based on these facts, a genuine issue of material fact exists as to whether a reasonable inspection procedure would have detected the same on the floor.

3. Finally, Food Lion contends that the trial court erred in failing to grant its motion for summary judgment because Walker failed to exercise ordinary care for her own safety. Food Lion argues that Walker had equal knowledge of the hazard since she had previously walked down the aisle before she fell there. Finding that there is no evidence that Walker previously knew of the chronically leaking chicken packaging, we disagree.

> [In routine cases] of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and . . . summary

---

[1] Our opinion in *Wallace v. Wal-Mart Stores*, 272 Ga. App. 343 (612 SE2d 528) (2005), does not alter this conclusion. In *Wallace*, the plaintiff slipped on a grape and there was no evidence showing that the store had knowledge of a particular risk that grapes might be on the floor. Id. at 346-347. Compare *Burnett*, supra, 236 Ga. App. at 867 (store had knowledge that children were throwing grapes).

judgment is granted only when the evidence is plain, palpable, and undisputed.

*Robinson v. Kroger Co.*, 268 Ga. 735, 749 (2) (b) (493 SE2d 403) (1997).
*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED MARCH 26, 2008.

*Lowendick, Cuzdey, Ehrmann, Wagner, Stine & Sansalone, Michael J. O'Hagan*, for appellant.
*Tommy J. Smith*, for appellee.