**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**November 27, 2012**

# In the Court of Appeals of Georgia

A12A1525. SAMUELS et al. v. CBOCS, INC.

BRANCH, Judge.

Nancy Samuels slipped, fell, and was injured while leaving a Cracker Barrel restaurant in Perry that is owned by CBOCS, Inc. Samuels and her husband filed suit against CBOCS, and the trial court granted summary judgment in favor of the defendant. Samuels appeals that decision, and she also contends the trial court erred by granting summary judgment while her motion to compel discovery was pending. We reverse because the trial court improperly weighed the evidence against Samuels.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in

the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

The relevant facts are quite simple. Construed in favor of Samuels, the evidence shows that sometime after 9:00 p.m. on February 10, 2008, Samuels was leaving the restaurant in the dark and was on the way to her car in the restaurant's asphalt parking lot, which was illuminated, when she stepped on a foreign object and fell. She described the object as "dark blackish gray" piece of wood approximately four inches long and one-half inch in diameter that rolled when she stepped on it.[1] Samuels picked it up after the fall and gave it to a restaurant employee who came to the scene of the fall after Samuels' companion sought help. There was some evidence that the object could have been a piece of landscaping mulch from a nearby bed. The evidence also showed that Jerome Griggs was the restaurant manager on duty at the time of the fall. It was Griggs' responsibility to inspect the grounds every thirty minutes to an hour beginning during his entire shift, yet he had not performed an inspection after his initial inspection when he arrived at 2:00 p.m. And no other employee had inspected the grounds during that time.

---

[1] In describing the stick, Samuels likened it to a "Lincoln Log."

2

In its order granting the motion for summary judgment, the trial court held that no inspection would have led to the discovery of the stick and, even if it had, no person inspecting would have felt it necessary to remove the stick:

> [T]he facts in this case show that even if the inspection procedure had been followed, the alleged hazard would not have been easily discovered. The incident occurred at night. The stick, as described by [Samuels], was approximately four inches long and one half inch in diameter and a "dark blackish gray" color. Further the stick was lying on dark pavement in the parking lot. Given such factors, it is unlikely that an employee conducting an inspection of the parking lot would have discovered the stick. Additionally, even if the alleged hazard had been discovered, it is still unlikely that an employee performing the inspection would have believed such an object to be a hazard that needed to be removed.

The trial court went on to determine, based on viewing a video of the scene, that the lighting of the parking lot was adequate.

CBOCS is liable "for injuries caused by [its] failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. Thus, CBOCS was "required to exercise ordinary care to protect the invitee from unreasonable risks of harm of which the owner/occupier has superior knowledge." (Citation omitted.) *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997). In a premises

3

liability action, the plaintiff "must plead and prove that: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control." (Footnote omitted.) *American Multi-Cinema v. Brown*, 285 Ga. 442, 444 (2) (679 SE2d 25) (2009). Thus, to carry its initial burden and to survive a motion for summary judgment, a plaintiff must provide evidence that, when construed in his or her favor, "would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard." (Citations omitted.) *The Landings Assoc. v. Williams*, 291 Ga. 397, 398 (728 SE2d 577) (2012).[2]

---

[2] If the plaintiff is successful, the burden of production then shifts:

At that point, the burden of production shifts to the defendant to produce evidence that the plaintiff's injury was caused by his or her own voluntary negligence (intentional disregard of a known risk) or causal negligence (failure to exercise ordinary care for one's personal safety). If the defendant succeeds in doing so, the burden of production shifts back to the plaintiff to come forward with evidence that creates a genuine dispute of fact on the question of voluntary or causal negligence by the plaintiff or tends to show that any such negligence resulted from the defendant's own actions or conditions under the defendant's control.

(Citations omitted.) *The Landings Assoc.*, 291 Ga. at 398-399.

4

"Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure." (Citation omitted.) *Food Lion v. Walker*, 290 Ga. App. 574, 576 (1) (660 SE2d 426) (2008). "In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place,[3] but that such program was actually carried out at the time of the incident." Id. Here, there is no allegation that CBOCS had actual knowledge of the stick in the parking lot. But the plaintiff introduced evidence to show that CBOCS failed to follow its established inspection schedule, thereby raising an inference that CBOCS had constructive knowledge of the object.

In rebuttal, CBOCS points to a line of cases that hold that a defendant who has failed to follow a reasonable inspection schedule may still obtain summary judgment if there is no evidence that the foreign object could have been discovered during a reasonable inspection. See, e.g., *Brown v. Host/Taco Joint Venture*, 305 Ga. App. 248, 251 (699 SE2d 439) (2010) (plaintiff admitted that grease spot on floor was not easily visible and therefore failed to establish that defendant could have easily seen and

---

[3] CBOCS does not argue that the one inspection at 2:00 p.m. constitutes a reasonable inspection procedure.

5

removed grease prior to fall); *Chastain v. CF Ga. North Dekalb L.P.*, 256 Ga. App. 802, 803-804 (569 SE2d 914) (2002) (no evidence reasonable inspection would have discovered a "two and a half foot line of dribbled water" where plaintiff testified that the water was not "easily visible"); *Lindsey v. Ga. Bldg. Auth.*, 235 Ga. App. 718, 720 (1) (509 SE2d 749) (1998) (no inference of constructive knowledge where plaintiff testified that single raised brick on the edge of the landing "was extremely difficult to see"); *Rodriquez v. City of Augusta*, 222 Ga. App. 383, 384 (1) (474 SE2d 278) (1996) (plaintiff admitted that dangerous substance was not visible to the eye).

These cases are, however, distinguishable, in part because in each case the plaintiff essentially admitted that the foreign object or other obstruction could not be seen upon a reasonable inspection. Here, there is no such admission. And there is no other evidence that the stick would have been difficult to see as it lay in the lighted parking lot. Thus, there is an issue of fact on that question. See *Gibson v. Halpern Enterprises*, 288 Ga. App. 790, 793 (655 SE2d 624) (2007) (question of fact about whether the pea-sized asphalt gravel "which was the same color as the slope" could have been detected on reasonable inspection). See also *Food Lion*, 290 Ga. App. at 577 (2) (issue of fact as to whether reasonable inspection procedure would have detected chicken blood on floor).

With regard to premises liability cases, the Supreme Court has made plain that

> [w]here reasonable minds can differ as to the conclusion to be reached with regard to questions of whether an owner/occupier breached the duty of care to invitees and whether an invitee exercised reasonable care for personal safety, summary adjudication is not appropriate.

*Robinson*, 268 Ga. at 740 (1). For the above reasons, summary judgment was not appropriate in this case, and we reverse. Samuels' second enumeration of error is moot.

*Judgment reversed. Miller, P. J., and Ray, J., concur.*

December 14, 2012

ON MOTION FOR RECONSIDERATION

On motion for reconsideration, CBOCS contends we overlooked controlling case law that provides that an owner of land is not liable for naturally occurring objects that have not become an obvious hazard. CBOCS quotes this language:

> In a series of cases involving slips and falls on water on rainy days, and on leaves on fall days, and on ice in winter weather, we have held that where the accumulation of such substances "on a premises is naturally occurring and not attributable to any affirmative action on the proprietor's part, the proprietor has no affirmative duty to discover and remove it in the absence of evidence that it had become an obvious hazard by means other than natural accumulation."

*Leibel v. Sandy Springs Historic Comm. Foundation*, 281 Ga. App. 390, 392 (636 SE2d 27) (2006), quoting *Cleveland v. Snowdrop Prop.*, 232 Ga. App. 447 (501 SE2d 546) (1998). The cases upon which CBOCS relies include evidence that the item in question was a "naturally occurring" item that came from an identified source. In *Leibel*, the item was a sweet gum ball from a nearby sweetgum tree. In *Augusta Country Club v. Blake*, 280 Ga. App. 650, the item was a magnolia seed pod from nearby magnolia trees. In *Cleveland v. Snowdrop Props.*, 232 Ga. App. 447 (1998), the item was wet leaves that "were the natural result of the fall season and the weekend's rain." In *Columbus Doctors Hosp. v. Thompson*, 224 Ga. App. 682 (1997), the item was ice.

In this case, however, there is no evidence, let alone undisputed evidence, that the object upon which Samuels fell was a naturally occurring substance on the

premises. Although there were trees and bushes somewhere on the premises , there is no evidence showing that the piece of wood came from any of these sources. And neither Mrs. Samuels nor her cousin testified that it was a stick from a nearby tree or bush. CBOCS also argues that Samuels admitted that the object was "naturally occurring" because she used the word "stick" to describe it. But that fact alone does not establish as a matter of law that it was a naturally occurring item in the area. For example, the object could have fallen off another vehicle or have been dropped by another customer. Furthermore, in addition to a branch from a tree, "stick" can also mean "a long slender piece of wood." See http://www.merriam-webster.com/dictionary/stick. It could have been piece of construction material, or indeed some of the wooden mulch that CBOCS's manager admitted was located in the nearby landscape beds. Because CBOCS cannot establish as a matter of undisputed fact that the item was naturally occurring, CBOCS cannot show that it was entitled to summary judgment based on the natural object cases.

Finally, CBOCS argues that we relied on improper evidence to raise an issue of fact about whether the stick was "naturally occurring." In the only applicable sentence, the opinion states, "There was some evidence that the object could have been a piece of landscaping mulch from a nearby bed." CBOCS argues that the statement is based on speculation and hearsay and, therefore, that it is inadmissible. It is true, as stated in CBOCS's MFR, that Samuels' cousin had no direct knowledge to show that the piece of wood was a piece of landscaping mulch. But the store manager said that there were beds around the parking spaces at the time of the fall that had a wood mulch material ; and Samuels' cousin saw where Samuels fell and came back to the same location two additional times and saw the material on the parking lot outside of the beds. Thus, there was some circumstantial evidence supporting the statement in the opinion.