ANDREWS, Judge,
dissenting.
I dissent because I believe the trial court correctly found as a matter of law that the appellee carried out a reasonable inspection procedure and had neither actual nor constructive knowledge of the hazard.
1. To demonstrate its lack of constructive knowledge of the hazard in this case, the appellee relied upon a report generated by an electronic inspection monitoring system the store utilized. The appellant contends the report was inadmissible hearsay on the ground the appellee failed to properly authenticate it as a business record.
Under OCGA § 24-8-803 (6), a document shall not be excluded as hearsay, where it is
... a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, if (A) made at or near the time of the described acts, events, conditions, opinions, or diagnoses; (B) made by, or from information transmitted by, a person with personal knowledge and a business duty to report; (C) kept in the course of a regularly conducted business activity; and (D) it was the *669 regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with paragraph (11) or (12) of Code Section 24-9-902 or by any other statute permitting certification. . . .
In this case, the appellee submitted the affidavit of the co-manager of the grocery store who personally responded to the slip and fall incident. He explained that it was the store’s policy to conduct formal inspections of the premises every hour using the Gleason ESP monitoring system, which required the inspecting employee to walk throughout the store and, at designated inspection sites, to hold a handheld device up to sensors that recorded the inspection data. The co-manager identified the system’s computer report attached to the affidavit as a “true and accurate copy of the inspection report for the date in question.” The computer-generated inspection report, which reflects the date of the incident and was printed the day after the incident, indicates the time of each inspection stop during each hourly inspection, the identity of the employee, the number and location of the sensors, and the condition of the inspected areas.
The obvious purpose of the monitoring system was to contemporaneously document compliance with the store’s inspection procedure. Nothing about the computer report suggests any lack of trustworthiness, and the co-manager’s affidavit sufficiently authenticated the inspection report. See, e.g., Loyal v. State, 300 Ga. App. 65, 66 (684 SE2d 124) (2009) (warehouse electronic security log); Hamilton v. State, 297 Ga. App. 47, 48 (1) (676 SE2d 773) (2009) (motel electronic key card interrogation log).
2. “[S]ummary adjudication as to constructive knowledge arising from the duty to inspect is not authorized absent plain, palpable and undisputable proof that customary inspection procedures or cleaning practices were in place, were actually followed and were adequate to guard against known or foreseeable dangers at the time of the patron’s alleged injuries. [Cits.]” Burnett v. Ingles Mkts., 236 Ga. App. 865, 867 (514 SE2d 65) (1999).
In the instant case, the affidavit of the store’s co-manager indicated that part of its inspection procedure required employees to be on the lookout for hazards as they went about their jobs during the day The affidavit and the inspection report also established the store had a regular procedure of formally inspecting the store every hour, and the procedure was followed on the day of the incident. In fact, the inspection report reflects that during the 13-hour period running from 7:55 a.m. to 9:08 p.m. on the day of the incident, a total of 9 *670 hazard clean-ups were recorded, attesting to the effectiveness of the inspection procedure. That averages out to a hazard occurring approximately every 1.4 hours, compared to the appellee’s inspection schedule of every hour.
The appellee further showed the following: (1) the area where the appellant fell was inspected approximately 37 minutes before the fall; (2) the substance on the floor appeared to be meat product or blood; (3) the store’s surveillance video showed the appellant’s friend traversing the area approximately six minutes before the fall occurred, with packages of meat in her shopping cart; (4) the video also showed several other patrons, including the appellant, traversing the area safely during the six minutes preceding the fall; (5) no store employees were in the immediate area of the hazard; and (6) the store had no knowledge of any leaks from its red meat packaging prior to this incident.
Once a defendant demonstrates a lack of actionable constructive knowledge by compliance with reasonable inspection procedures, the burden shifts back to the plaintiff to show how long the foreign substance had been allowed to remain on the floor. The plaintiff must show that the substance was on the floor for a length of time sufficient for knowledge of it to be imputed to the defendant.
(Citations and punctuation omitted.) Hopkins v. Kmart Corp., 232 Ga. App. 515, 518 (2) (502 SE2d 476) (1998). In the instant case, the appellee presented evidence showing it carried out a reasonable and effective inspection procedure, but in turn the appellant came forward with no competent evidence showing anything else that would impute constructive knowledge of the hazard to the appellee.
This Court has occasionally found jury issues on the reasonableness of inspection procedures where the inspections occurred at even shorter intervals than in this case, but in those cases the store proprietor had some notice of the risk of a particular hazard. See Food Lion v. Walker, 290 Ga. App. 574, 576 (1) (660 SE2d 426) (2008). In that regard, the appellant claimed to have overheard a store employee named “Bob,” but who otherwise was unidentified, remarking that store personnel had not been packaging the meat correctly But that utterance would not qualify as an admission under OCGA § 24-8-801 and constituted inadmissible hearsay. The record is devoid of anything else that would have put the appellant on notice of the need for more frequent inspections.
The evidence showed that neither party here had actual knowledge of the hazard. And as the appellee carried out a reasonable *671 inspection procedure on the day of the incident and the appellant failed to show anything else that could impute knowledge of the hazard to the appellee, the majority opinion is in error in reversing the trial court’s grant of summary judgment for the appellee.
Decided March 10, 2017.
Kynes Law, Leland H. Kynes; Haug Law Group, James R. Haug, Colin A. Barron, for appellant.
Meadows, Made & Sutton, Rod G. Meadows, Stephen P. Morris, for appellee.
I am authorized to state that Judge McMillian and Judge Self join in this dissent.