**THIRD DIVISION
ELLINGTON, P. J.,
ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 29, 2017**

# In the Court of Appeals of Georgia

A17A0613. DONASTORG v. RAINBOW USA, INC.

RICKMAN, Judge.

In this premises liability action, Precious Donastorg sued Rainbow USA, Inc. to recover monetary damages for injuries she allegedly received after stepping on an anti-theft sensor pin while shopping in a clothing store owned and operated by Rainbow. The trial court granted summary judgment in favor of Rainbow upon concluding that Rainbow lacked superior knowledge of the hazard that injured Donastorg. Donastorg argues that genuine issues of material fact remain as to Rainbow's knowledge of the hazard such that the grant of summary judgment in its favor was improper. We agree and reverse.

We apply a de novo standard of review to an appeal from a grant of summary judgment and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to

the nonmovant. A defendant may obtain summary judgment by showing an absence of evidence supporting at least one essential element of the plaintiff's claim.

*Kennestone Hosp. v. Harris*, 285 Ga. App. 393, 393-394 (646 SE2d 490) (2007).

The pertinent facts in this case are largely undisputed. The record shows that shortly after 4:00 p.m. on the afternoon in question, Donastorg was shopping with her daughter at a Rainbow clothing store when she stepped on an anti-theft sensor pin located on the store's floor. Donastorg stepped on the pin with her left foot as she removed an item of clothing from the clothing rack and held it up to her daughter. The pin, approximately the size of a thumb tack, went through Donastorg's sandal and punctured her foot, allegedly causing permanent nerve and/or tissue damage.

Donastorg deposed that, at the time of the incident, a Rainbow employee was unloading new inventory immediately to Donastorg's right, and three additional employees were standing behind the cash registers approximately four to five feet away. Neither Donastorg nor any of the Rainbow employees saw the pin prior to Donastorg stepping on it, and it is unknown how the pin got onto the floor or when it surfaced there. The record contains no evidence that the sensor corresponding to the pin was ever located.

Donastorg filed suit against Rainbow, alleging that Rainbow breached its duty of care by failing to keep its premises free from hazardous conditions that it knew or should have known existed. The evidence obtained during discovery showed that every Rainbow employee was trained on how to securely attach the security sensors to merchandise, and the sensors were attached to all or most of the items in the store.[1] Rainbow received new inventory daily, and its employees were continuously attaching security sensors to the newly received items. Although the employees generally attached the sensors in the stockroom where new items were received, they were also authorized to attach them on the storeroom floor during working hours.[2]

Upon the purchase of an item, Rainbow employees would remove the security sensor at the cash registers during the checkout process; however, Rainbow suffered from shoplifters "every day" and "around the clock" who would pry off the sensors

---

[1] The district supervisor deposed that Rainbow's policy requires that security sensors be placed on all items costing over $10.99, although the co-manager of the subject store deposed that its employees attach sensors to every item of clothing in the store.

[2] Although the employee to Donastorg's immediate right was unloading new inventory at the time of the incident, that employee was not deposed and the record otherwise contains no evidence as to whether she was attaching the sensor pins to the new items.

and dispose of them without regard.[3] The security sensors were also known to occasionally fall off of dropped items and there was testimony that stray pins had been found on the floor on previous occasions.[4] Rainbow's training manual specifically cautioned employees to ensure that the sensor pins were kept off the floor as "[t]hey could be stepped on and cause injury."

The store policy mandated that the floor be swept twice daily–once immediately prior to the store opening and once at closing–and otherwise "if needed." The floor had been swept prior to the store's 10:00 a.m. opening on the day in question, approximately six hours before the incident. Rainbow introduced no evidence of any additional policies or procedures requiring that the storeroom floor be inspected or swept during working hours.

---

[3] During one deposition, the deposing attorney was able to pry open and remove a sensor pin without the need for any tools.

[4] The sole record evidence related to prior incidents involving the security pins is the store manager's affirmative response when asked if stray pins had ever before been found laying on the floor, and Donastorg's deposition testimony an unidentified Rainbow employee mentioned after the incident that "years ago it happened to another lady." Nevertheless, construing this evidence, as the dissent does, to mean that "either the store's customers were exposed to a minimal risk, or the store exercised extraordinary care in keeping the premises safe" does not comport with our standard of review on summary judgment.

Rainbow moved for summary judgment, asserting that it lacked the requisite knowledge of the hazard so as to absolve it of liability. The trial court granted Rainbow's motion, and this appeal follows.

Under Georgia law, "[a]n owner or occupier of land has a legal duty, enforceable by lawsuit, to exercise ordinary care to keep and maintain its premises and the approaches in a condition that does not pose an unreasonable risk of foreseeable harm to the invited public." *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442 (679 SE2d 25) (2009); see OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."). Nevertheless, a property owner/occupier "is not an insurer of the safety of its invitees. The mere occurrence of an injury does not create a presumption of negligence." (Citation and punctuation omitted.) *Kennestone Hosp.*, 285 Ga. App. at 394.

Georgia has implemented a two-prong test in order to assess liability to a property owner/occupier on a premises liability claim involving a foreign object: "an invitee must prove (1) that the defendant had actual or constructive knowledge of the

hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson v. Kroger Co.*, 268 Ga. 735, 748-249 (2) (b) (493 SE2d 403) (1997). The record here is undisputed that Rainbow did not have actual knowledge of the existence of the pin that injured Donastorg and that Donastorg lacked knowledge of the pin despite exercising ordinary care for her own safety. Thus, this case turns on whether Rainbow had constructive knowledge of the hazard.

A plaintiff may demonstrate a proprietor's constructive knowledge of a hazard by showing that "(1) a store employee was in the immediate area of the hazard and could have easily seen the [foreign object] or (2) the foreign [object] remained long enough that ordinary diligence by the store employees should have discovered it." (Punctuation and footnote omitted.) *Johnson v. All American Quality Foods, Inc.*, ___ Ga. App. ___, *2 (Case No. A16A1724, decided Mar. 10, 2017); see *Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980).

(1) Donastorg asserts that constructive knowledge may be inferred because several Rainbow employees were working in the area of the hazard and had the opportunity to discover and remove the pin prior to her injury. The employees' mere presence, however, is not in and of itself sufficient to survive summary judgment on

6

the issue of constructive knowledge. See *Kroger Co. v. Williams*, 274 Ga. App. 177, 178 (617 SE2 160) (2005). Rather, "it must be shown that the [employees were] in a position to have *easily* seen the [object] and removed it." (Citation and punctuation omitted; emphasis supplied.) Id. In light of the small nature of the pin, there is no evidence from which to conclude that any Rainbow employee–three of whom were four to five feet away and behind cash registers, and the other of whom was on the side of Donastorg opposite the pin–would have been in a position to have easily seen and removed it. It follows that Donastorg has failed to create a jury question as to this issue. See id. at 178-179; *Bolton v. Wal Mart Stores, Inc.*, 257 Ga. App. 198 (570 SE2d 643) (2002).

(2) The evidence does create a jury issue, however, as to whether Rainbow had constructive knowledge of the hazard using the second prong of the test, i.e., whether the pin had remained on the floor long enough that ordinary diligence by the store employees should have discovered it.

> Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure. In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident. In addition, to withstand a motion for summary judgment, the

7

plaintiff need not show how long the hazard had been present unless the owner has demonstrated its inspection procedures.

(Citation and punctuation omitted.) *Food Lion, Inc. v. Walker*, 290 Ga. App. 574, 576 (1) (660 SE2d 426) (2008). The reasonableness of an inspection procedure depends on the nature of the business, the size of the store, and the number of customers. See id. Significantly,

summary adjudication as to constructive knowledge arising from the duty to inspect is not authorized absent plain, palpable and undisputable proof that customary inspection procedures or cleaning practices were in place, were actually followed and were adequate to guard against known or foreseeable dangers at the time of the patron's alleged injuries.

(Citations omitted.) *Burnett v. Ingles Markets, Inc.*, 236 Ga. App. 865, 867 (514 SE2d 65) (1999).

There is no doubt, as illustrated by the express warning in its training manual, that Rainbow was aware of the specific risk associated with stray sensor pins on the floor. Likewise, the abundance of shoplifting activity suffered by Rainbow on a daily basis is well established in the record, as is Rainbow's admission that shoplifters tended to randomly discard the sensor pins without regard to where they landed. Rainbow employees were authorized to attach the security sensors on the storeroom

8

floor, and the pins were known to become dislodged from dropped items and had previously been found on the floor. Yet Rainbow introduced no evidence of any policy or procedure requiring that the storeroom floor be inspected for safety hazards during working hours.

In light of this evidence, we cannot say that the record before this Court presents "plain, palpable and undisputable proof" that Rainbow's inspection procedures or cleaning practices "were adequate to guard against known or foreseeable dangers" at the time of Donastorg's injury. *Burnett*, 236 Ga. App. at 867.

> We must remember that it is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.

(Citation and punctuation omitted.) *Kroger Co. v. Schoenhoff*, 324 Ga. App. 619, 622-623 (751 SE2d 438) (2013). It follows that the trial court's grant of summary judgment in favor of Rainbow as to the issue of constructive knowledge under the second prong of the test was erroneous. See *Williams v. GK Mahavir, Inc.*, 314 Ga. App. 758, 761 (726 SE2d 71) (2012) (reversing the grant of summary judgment to

9

hotel defendant because question of fact remained as to whether hotel policy of cleaning the lobby "only if it needed to be cleaned" without any scheduled walk through or inspections for known hazards was reasonable); *Gilbert v. Automotive Purchasing Svc.*, 254 Ga. App. 770, 772 (563 SE2d 906) (2002) (reversing grant of summary judgment to automobile seller after plaintiff slipped and fell on showroom floor because "it is for a jury to determine whether the [store] employee conducted a cursory and inadequate inspection which failed to disclose the substance upon which [plaintiff] slipped and whether the substance was discoverable upon a reasonable inspection"); see also *Ramotar v. Kroger Co.*, 322 Ga. App. 28, 31 (743 SE2d 591) (2013) (physical precedent only) (reversing grant of summary judgment in favor of grocery store because, "[i]n the absence of reasonable inspection procedures, we cannot conclude as a matter of law that [defendant store] lacked constructive notice of the alleged hazard").

Citing *Chastain v. CF Georgia North Dekalb L.P.*, 256 Ga. App. 802 (569 SE2d 914) (2002), Rainbow asserts that the trial court properly granted summary judgment in its favor regardless of the adequacy of its inspection procedures because of Donastorg's deposition testimony regarding her inability to see the pin. In *Chastain*, the plaintiff deposed that in order to see the dribbles of water on the shiny

mall floor that caused her to fall, one would have had to bend down and look from a specific angle. Id. at 803-804. In affirming the trial court's grant of summary judgment to the mall owner and janitorial service responsible for maintaining the floor, the majority of this Court held that, regardless of whether the defendants complied with their inspection policy, "[i]f there is no evidence that the [hazard] could have been discovered during a reasonable inspection, then no inference arises that defendants' failure to discover the defect was the result of any alleged failure to inspect." (Citation omitted.) Id. at 803; see also *Blake v. Kroger Co.*, 224 Ga. App. 140, 144 (1) (480 SE2d 199) (1996). In essence, the *Chastain* majority held that plaintiff's testimony established no causal connection between plaintiff's injury and any alleged inaction by defendants as a matter of law. We cannot say the same under the facts presented in this case.

First, it is not immediately clear from Donastorg's testimony that it was the nature or location of the pin, as opposed to her position relative to it, that rendered it difficult for her to detect:

[Attorney]: Did you see the pin before you stepped on it?

[Donastorg]: No.

. . .

[Attorney]: Okay. Was the pin covered by anything?

[Donastorg]: No.

[Attorney]: It was just in the middle of the floor?

[Donastorg]: Yes.

[Attorney]: Do you think if you would have looked down at the floor you would have seen the pin?

[Donastorg]: No, because the rack – the rack is so full, and I'm short, and [my daughter is] short, so we wouldn't have seen it. It happened, like, right there.

[Attorney]: I know. I understand you didn't see it, but I guess my question is . . . if you looked down at the ground like this, do you think you could have seen it?

[Donastorg]: No.

[Attorney]: I thought you said it was out in the open.

[Donastorg]: No, you wouldn't have seen it. You tell me if I had looked down in front of me? No, because I was this way when I step backwards on the left side of the floor.

[Attorney]: But there was nothing hiding it?

[Donastorg]: No.

[Attorney]: Okay, If you were looking for the pin, do you think you could have seen it?

[Donastorg]: No.

Properly construing this testimony in the light most favorable to Donastorg, we cannot definitively conclude that it equates to an admission that even an employee who was fully aware of the hazards associated with stray sensor pins would not have been able to see and identify the hazard during a reasonable inspection of the storeroom floor. See *Samuels v. CBOCS, Inc.*, 319 Ga. App. 421, 424 (742 SE2d 141) (2012) (distinguishing *Chastain* and reversing the grant of summary judgment to restaurant because it failed to show an inspection had been conducted and a factual question remained as to whether the foreign object would have been difficult to see during a reasonable inspection); *Food Lion, Inc. v. Walker*, 290 Ga. App. 574, 577 (2) (660 SE2d 426) (2008) (distinguishing *Chastain* and rejecting store's assertion that it was entitled to summary judgment due to the difficulty in detecting the foreign substance when it "was on notice of the risk of the particular hazard that caused [plaintiff] to fall").

13

Moreover, we cannot say as a matter of law that there is no causal connection between Donastorg's injury and Rainbow's lack of an inspection procedure to identify and remove known potential hazards from the storeroom floor during working hours. See generally *Samuels*, 319 Ga. App. at 424*; Walker*, 290 Ga. App. at 577-778. Compare *Rodriquez v. City of Augusta*, 222 Ga. App. 383 (474 SE2d 278) (1996) (affirming grant of summary judgment to property owner because an inspection had been done five to ten minutes prior to plaintiff's fall and the foreign substance "was not visible to the eye"). "With regard to premises liability cases, the Supreme Court has made plain that where reasonable minds can differ as to the conclusion to be reached with regard to questions of whether an owner/occupier breached the duty of care to invitees . . ., summary adjudication is not appropriate." (Citation and punctuation omitted.) *Samuels*, 319 Ga. App. at 424.

Accordingly, we reverse the trial court's grant of summary judgment to Rainbow and hold that genuine issues of material fact remain on the question of constructive knowledge.

*Judgment reversed. Ellington, P. J., Dillard, P. J., McFadden, P. J., and Ray, Branch, and Self, JJ., concur. Andrews and Bethel, JJ., dissent.*

14

# In the Court of Appeals of Georgia

A17A0613. DONASTORG v. RAINBOW USA, INC.

ANDREWS, Judge, dissenting.

This is yet another premises liability case which turns on imputing the premises owner with constructive knowledge of the hazard, despite the absence of any evidence in the record as to how long the foreign object had been on the floor. In such cases, under *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991), it should be axiomatic that a premises owner would be entitled to summary judgment where there is an absence of evidence to establish an essential element of the plaintiff's claim. However, in contravention of *Lau's Corp.*, this Court wrongly continues to impose a duty on the premises owner to produce evidence of adherence to a reasonable inspection procedure before considering the absence of evidence to

support the plaintiff's claim. See *Williams v. GK Mahavir, Inc.*, 314 Ga. App. 758, 763 (726 SE2d 71) (2012).

Nevertheless, even imposing such a duty on the appellee premises owner in this case, I believe the appellee satisfied that requirement and still was entitled to summary judgment. What constitutes a reasonable inspection procedure depends "on the nature of the business, the size of the store, the number of customers, the nature of the dangerous condition, and the store's location." *Shepard v. Winn Dixie Stores*, 241 Ga. App. 746, 748 (1) (527 SE2d 36) (2000). In this case, the appellee was a clothing store, not one of the usual suspects in a premises liability case where liquids or produce on the floor seem to be a common hazard.

The appellee acknowledged its use of the security pins presented a risk of injury; its employee training materials cautioned about loose pins and showed the employees how to attach the security pins properly so as to protect the inventory against theft and to protect customers from the risk of puncture. But the record in this case shows the risk of injury associated with the security pins was effectively managed by the appellee. The appellee carried out a daily inspection procedure at least twice a day, by sweeping the floors in the morning and in the afternoon, and more frequently if needed. The store inventory usually consisted of approximately

2

95,000 articles of clothing, most of which had security pins attached. The store manager explained that pins could be loosened in a number of ways: sometimes by not attaching them securely; sometimes when an article of clothing was dropped to the floor; and sometimes when shoplifters pried them off. The store manager acknowledged a loose pin occasionally was found on the floor, but there was no probative evidence of any prior similar incidents. In light of the large number of security pins used in the store and the absence of any evidence of prior incidents of injury caused by pins on the floor, either the store's customers were exposed to a minimal risk, or the store exercised extraordinary care keeping the premises safe. Under these circumstances, the appellee carried out a reasonable inspection procedure, as there was no need for the appellee to monitor the store floor more frequently than it did.

Moreover, even if the appellee's inspection procedure was not reasonable, or even if the appellee had totally failed to inspect the premises, constructive knowledge of the loose security pin on the floor could not be imputed to the premises owner unless the hazard could have been easily seen and removed. See *Kitchens v. Restaurant Management Services, Inc.*, 192 Ga. App. 313, 314 (385 SE2d 11) (1989); *Lovins v. Kroger Company*, 236 Ga. App. 585, 586 (1) (512 SE2d 2) 1999). "If there

is no evidence that the [pin] could have been discovered during a reasonable inspection, then no inference arises that [the appellee's] failure to discover the defect was the result of any alleged failure to inspect." (Citation omitted.) *Chastain v. CF Georgia North DeKalb, L.P.*, 256 Ga. App. 802, 803 (569 SE2d 914) (2002).

In the instant case, the only evidence concerning the visibility of the security pin was the plaintiff's admission that she could not have seen the pin even if she had been looking right at it. If the pin was invisible to the plaintiff, it stands to reason the pin was just as invisible to any of the appellee's employees. For that reason, "summary judgment was proper because the alleged defect was, by [the appellant's] own admission, so difficult to detect. Constructive knowledge can only be inferred with proof that the proprietor or its agent could have easily discovered and corrected the alleged hazard." (Citation omitted.) *Lindsey v. Ga. Building Authority*, 235 Ga. App. 718, 720 (509 SE2d 749) (1998).

In summary, here it was undisputed neither party had actual knowledge of the loose security pin on the floor, and there was no evidence as to how long the pin had been on the floor. There was no evidence of any prior similar incident involving this specific hazard, which, considering the sheer volume of security pins in use at the appellee's store on a daily basis, surely attested to the appellee's diligence in

4

maintaining a premises safe for its customers. And lastly, the evidence showed that the loose security pin was not visible and therefore not easily removable. The above factors add up to one conclusion: that the appellee exercised ordinary care in keeping its premises safe for its invitees and thus was entitled to summary judgment.

Accordingly, I dissent from the majority opinion's reversal of the grant of summary judgment for the appellee.

I am authorized to state that Judge Bethel joins in this dissent.