**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 15, 2017**

# In the Court of Appeals of Georgia

A17A0390. INGLES MARKETS, INC. v. RHODES.

ANDREWS, Judge.

Penny Rhodes sued Ingles Markets, Inc. for damages after she slipped and fell at an Ingles grocery store. The trial court denied Ingles's motion for summary judgment, and Ingles filed an application for interlocutory review, which we granted. For reasons that follow, we reverse.

On appeal from a summary judgment ruling, we review the record de novo, construing the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party. See *Adamchick v. Cracker Barrel Old Country Store*, 281 Ga. App. 677 (637 SE2d 44) (2006). A defendant is entitled to judgment as a matter of law when "the record lacks evidence sufficient to create a jury issue on at least one essential element of the plaintiff's claim." See id. On summary judgment,

[t]he defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence. If the defendant does so, the plaintiff cannot rest on [her] pleadings, but must point to specific evidence that gives rise to a triable issue of fact.

Id.

Viewed favorably to Rhodes, the record shows that she visited an Ingles grocery store on November 13, 2012, to purchase items for Thanksgiving dinner. During the shopping trip, Rhodes walked down Aisle 8, which housed baking products such as sugar, cooking oil, and canned milk. She picked up two cans of milk, began walking back up the aisle, slipped on grease or oil, and fell to the floor. While on the floor, Rhodes saw a grease spot that "looked like it had been there for a while" and "was trying to dry up." She asserted that it appeared to be "trying to dry, but [it was] still greasy like, ashy like." According to Rhodes: "That's what it looked like, you know. . . . That's what it looked like to me when I was down there. I don't know, but that's what it looked like."

After her fall, Rhodes went to the customer service desk, where she reported the incident to Ellen Albo, Ingles's customer service manager. Albo immediately prepared an incident report, which stated that the fall had occurred at 2:05 p.m. and that Rhodes had "[s]lipped in oil."

2

The record shows that Ingles had a safety policy in place that required a member of the management team to visually inspect the store at least every two hours. Albo described the inspection procedure as follows:

> [A] manager walks the entire store to make sure that there are no potential hazards on the floor. If anything is found on the floor during the inspection, it is immediately cleaned or removed. After completing each inspection, the manager initials the "sweep log."

Pursuant to the safety policy, Albo inspected the store at approximately 8:00 a.m., 10:00 a.m., 12:00 p.m., and 2:00 p.m. on the day Rhodes fell. During the 2:00 p.m. inspection, she "walked the front aisle of the store, looking down each of the numbered grocery aisles to ensure that the floor was clean and free of hazards." Albo also walked up and down Aisle 8. As she explained: "It is my habit to pay particular attention to Aisle 8 during my store inspections because if sugar spills onto the floor, it is very slippery and it can be more difficult to see than other types of spills."

When Albo inspected Aisle 8 at approximately 2:00 p.m., "there was no oil or other foreign substance on the floor." No more than ten minutes later, Rhodes approached Albo to report her fall. Albo completed the incident response paperwork with Rhodes, then went to Aisle 8, where she saw small drops of oil clearly visible on the floor, as well as oil on the shelf where cooking oil was stocked.

3

Rhodes sued Ingles in premises liability, alleging that Ingles failed to keep the store safe for invitees. The trial court denied Ingles's motion for summary judgment, but issued a certificate of immediate review, and we granted Ingles's application for interlocutory appeal.

Pursuant to OCGA § 51-3-1, an owner or occupier of land who invites "others to come upon his premises for any lawful purpose, . . . is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." Mere proof of an injury, however, does not establish liability. See *Adamchick*, supra at 678. "[T]he true basis for liability is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm." Id. (punctuation omitted). To demonstrate superior knowledge in a foreign substance slip-and-fall case, a claimant must show (1) that the proprietor had actual or constructive knowledge of the substance and (2) that the claimant lacked equal knowledge. See *Roberson v. Winn-Dixie Atlanta*, 247 Ga. App. 825 (544 SE2d 494) (2001).

Ingles argues that Rhodes cannot meet the superior knowledge requirement. We agree. Rhodes has pointed to no evidence of actual knowledge. Instead, the issue

is whether Ingles had constructive knowledge of the hazard, which may be established in two ways:

> [1] by showing that an employee of the defendant was present in the immediate area and could easily have seen the substance and removed it; or [2] by showing that the substance was on the floor for such a time that it would have been discovered and removed had the proprietor exercised reasonable care in inspecting the premises.

Id. at 826.

The evidence does not raise a question of fact as to either method of proof. Rhodes has not produced any evidence that an Ingles employee was present in the immediate area where she fell and could have easily seen or removed the oil. And there is no competent evidence that the oil was on the floor for such a time that it would have been discovered through a reasonable inspection. On the contrary, Albo testified that the floor was clean when she inspected the area just ten minutes before Rhodes fell.

"In cases where a proprietor has shown that an inspection occurred within a brief period prior to an invitee's fall, we have held that the inspection procedure was adequate as a matter of law." *Brown v. Host/Taco Joint Venture*, 305 Ga. App. 248, 252 (699 SE2d 439) (2010) (punctuation omitted). Generally, inspections conducted

15 minutes prior to a fall meet this standard. See id.; *Adamchick*, supra; *Super Discount Mkts. v. Clark*, 213 Ga. App. 132, 133-134 (443 SE2d 876) (1994); *Roberson*, supra at 826; *Mazur v. Food Giant*, 183 Ga. App. 453, 454 (1) (359 SE2d 178) (1987). As we have explained, "a proprietor is under no duty to patrol the premises continuously in the absence of facts showing that the premises are unusually dangerous." *Mazur*, supra at 453 (1).

Rhodes has not cited any evidence that the area where she fell was unusually dangerous or that Albo's inspection was unreasonable. Although Albo paid close attention when inspecting Aisle 8 because sugar spills are slippery and difficult to see, nothing indicates that spills on Aisle 8 were particularly common, and Rhodes admittedly slipped on oil, not sugar. See *Markham v. Schuster's Enterprises*, 268 Ga. App. 313, 315-316 (601 SE2d 712) (2004) (evidence that proprietor knew floor was wet did not create issue of fact as to premises liability where claimant testified that she slipped on grease). Compare *Food Lion v. Walker*, 290 Ga. App. 574, 577 (1) (660 SE2d 426) (2008) (although grocery store manager inspected meat area 15 or 20 minutes before claimant slipped on chicken blood, question of fact remained as to reasonableness of inspection where the store "knew that its fresh chicken leg quarters

6

were on sale and that they inevitably dripped a mixture of blood and water on the floor").

Pointing to her own testimony that the oil "looked like it had been there for a while," Rhodes argues that questions of fact remain regarding when Albo actually inspected Aisle 8. Again, however, Albo offered clear, direct testimony that she inspected the area no more than ten minutes before Rhodes reported the fall. In contrast, Rhodes vaguely asserted that the oil appeared to be "trying to dry" and looked "ashy," ultimately stating, "I don't know." These statements, which are not necessarily inconsistent with Albo's testimony that the floor was spill-free ten minutes earlier, do not create a factual issue here. See *Brown*, supra at 253 ("In passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists."); *Mazur*, supra ("[A] fact shown by direct, uncontradicted, reasonable and unimpeached evidence cannot be disproved by circumstantial evidence consistent with such direct evidence.") (punctuation omitted).

Rhodes cannot establish that Ingles had superior knowledge of the oily hazard on which she fell. The trial court, therefore, erred in denying Ingles's motion for summary judgment. See *Brown*, supra; *Adamchick*, supra.

*Judgment reversed. Ellington, P. J., and Rickman, J., concur in judgment only.*